## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 41178-2013

| | | |
|---|---|---|
| CHRISTINA J. GREENFIELD, | ) | |
| | ) | Coeur d'Alene, April 2015 Term |
| Plaintiff-Appellant, | ) | |
| | ) | 2015 Opinion No. 47 |
| v. | ) | |
| | ) | Filed: May 21, 2015 |
| ERIC J. WURMLINGER and ROSALYN D. | ) | |
| WURMLINGER, husband and wife, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. Hon. Lansing L. Haynes, District Judge.

The judgment of the district court is <u>affirmed</u>.

Christina J. Greenfield, Post Falls, argued in her own behalf.

John C. Riseborough, Paine Hamblen LLP, Spokane, Washington, argued for respondents.

_____

EISMANN, Justice.

This is an appeal out of Kootenai County from a judgment holding that the defendants were not violating the subdivision CC&R's by operating a bed and breakfast from their home or by having arborvitaes higher than six feet, and awarding them a judgment totaling $168,755.37 against the plaintiff for her conduct that caused them emotional distress. We affirm the judgment of the district court and award attorney fees on appeal.

### I.
### Factual Background.

This is an appeal from a judgment resolving a dispute between two neighbors. In 1994, Eric and Rosalynn Wurmlinger (Defendants) built their home in the Park Wood Place subdivision in Post Falls, Idaho, on a lot next to the home of Judy Richardson. The Defendants operated a bed and breakfast from their home, and they planted a row of arborvitaes near the

property line between their lot and the lot owned by Ms. Richardson. In 2005, Christina Greenfield (Plaintiff) purchased the Richardson property. The following year, Plaintiff had an attorney write to the Defendants, stating that the operation of their bed and breakfast violated the subdivision's protective covenants, conditions, and restrictions (CC&R's) and that the height of the arborvitaes violated the height restriction on fences contained in the CC&R's and the height restriction on hedges contained in a city ordinance. Thereafter, the dispute between Plaintiff and Defendants centered on the operation of Defendants' bed and breakfast in their home and the height of their arborvitaes near the boundary between the two properties.

On April 12, 2006, Post Falls sent Mr. Wurmlinger a letter stating that the city had received a complaint regarding a hedge on his property and that the city code required fences and hedges within a side yard setback to be no higher than six feet. The letter quoted the relevant ordinance and asked that the hedge be brought into compliance within thirty days. Defendants trimmed their arborvitaes to bring them into compliance, and in June 2006 the city amended its ordinance to remove the limitation on the height of hedges. Thereafter, Defendants allowed their arborvitaes to grow taller than six feet.

By 2010, the arborvitaes had grown to a height of ten to twelve feet. In April 2010, Defendants returned from a vacation and discovered that about four to six feet had been cut from ten of their arborvitaes. It is undisputed that Plaintiff had her agent cut the trees. Plaintiff was charged criminally, but the charges were later dismissed. Thereafter, Defendants began experiencing vandalism to their property. Over a period of about eighteen months, there were fourteen incidents of paint being splashed or poured on improvements to their property, with the last incident occurring about four months before the jury trial in this case.

On September 23, 2010, Plaintiff filed this action alleging four claims against Defendants. First, Plaintiff asked for a declaratory judgment that Defendants were violating the CC&R's by operating the bed and breakfast, allowing their arborvitaes to grow higher than five feet, and obstructing a pedestrian easement across their property. She sought an injunction requiring Defendants to cease the alleged violations. Second, Plaintiff alleged that the plants and trees on Defendants' property that blocked her view of the Spokane River constituted a nuisance. She sought damages and an order requiring Defendants to remove the offending foliage. Third, Plaintiff alleged that Defendants had agreed to maintain their foliage along the common boundary line at a height of six feet; that Plaintiff had the foliage trimmed to the agreed height

2

when Defendants breached that agreement; and that Defendants then contacted law enforcement which resulted in Plaintiff being charged with a misdemeanor. As a result, Plaintiff claimed that Defendants intentionally caused her emotional distress, for which she was entitled to recover damages. Fourth, Plaintiff alleged that Defendants breached their agreement with her and made false and defamatory statements about her to law enforcement, which negligently caused her emotional distress. She requested an award of damages on that claim. Defendants filed a counterclaim seeking damages for negligent or intentional infliction of emotional distress, common law trespass, and timber trespass.

Prior to trial, Plaintiff's claim for intentional infliction of emotional distress was dismissed upon Defendants' motion for summary judgment. Plaintiff's claims for nuisance and negligent infliction of emotional distress and Defendants' claims were tried to a jury. It returned a special verdict finding that Plaintiff had failed to prove her claims of nuisance and negligent infliction of emotional distress. The jury also found that Defendants had proved their claim of negligent infliction of emotional distress, for which it awarded them $52,000 in damages, and their claim of timber trespass, for which it awarded them $17,000 in damages. The jury also found that Defendants had proved that Plaintiff committed a common law trespass, but Defendants did not prove any damages for that claim. Plaintiff's action for a declaratory judgment that Defendants were in violation of the CC&R's was tried to the district court, and it later entered a decision finding that Plaintiff had failed to prove that claim.

The timber trespass damages were trebled to $51,000 pursuant to Idaho Code section 6-202, and the court awarded Defendants court costs and a reasonable attorney fee totaling $65,755.37. It entered a judgment against Plaintiff in the amount of $168,755.37, and she timely appealed.

## II.
### Did the District Court Err in Finding that Defendants Were Not Violating the CC&R's?

Prior to the jury trial, the district court instructed the parties that it would determine the issues regarding Defendants' alleged violations of the CC&R's, but would do so based upon the evidence presented during the jury trial. After the jury returned its verdict, the court had a status conference with the parties, and it informed them that they could submit closing arguments in

writing regarding the alleged violations of the CC&R's. Once they had done so, the court filed its decision finding that Plaintiff had failed to prove the alleged violations of the CC&R's.

With respect to the alleged violations of the CC&R's, Plaintiff lists the following issues:

a) Did the District Court err in its finding that the Respondents' operation of their business, the River Cove Bed and Breakfast and wedding event facility did not violate the neighborhood CC&Rs?
b) Did the District Court err in its finding that the Respondents' operation of their business, the River Cove Bed and Breakfast and wedding event facility was "Not open to the public"?
c) Did the District Court err in its finding that the Respondents' operation of their business, the River Cove Bed and Breakfast and wedding event facility, qualifies as a "Home Occupation" and not a "Business" as so defined in the neighborhood CC&Rs?
d) Did the District Court err in its finding that the Respondents' lack of maintenance of the arborvitae hedge, which is located on or near the real property line that separates both properties, did not violate the neighborhood CC&Rs height restrictions and therefore refuse to enter an Injunction prohibiting the Respondents' [sic] from allowing the arborvitae shrubs to exceed the height restrictions as set forth in the neighborhood CC&Rs?

**Operation of the bed and breakfast.** The CC&R's provide that no lot within the subdivision can be used for any purpose except for a single family residence, but that "[h]ome occupations of family members, which have no exterior visibility, are not prohibited provided they are conducted totally within the residence, are not open to the public, have no employees and do not generate extra vehicular traffic or street parking." Defendants' house has six bedrooms, three of which they rent for their bed and breakfast.

Initially, Defendants had weddings at their home which attracted a significant number of guests; they owned a boat and offered river cruises to those staying at their bed and breakfast; and they once set up a tent trailer to accommodate a couple who wanted to attend an athletic event in nearby Coeur d'Alene. In 2008, there was a wedding which resulted in nine cars parking on the street. That prompted a call from the city, which licenses home occupation businesses and requires that they comply with certain conditions. As a result, Defendants changed their wedding policy, and the district court found that they "now offer small nuptial exchange ceremonies that involve no more than eight individuals," that the ceremonies are conducted in the residence, that those in the wedding party must stay in the bed and breakfast, and that any music is played very softly. The court found persuasive the testimony of neighbors who never heard any excessive noise coming from Defendants' property.

4

Covenants that restrict the uses of land are valid and enforceable. *Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996). However, "[b]ecause restrictive covenants are in derogation of the common law right of a person to use land for all lawful purposes, covenants are not to be construed to extend by implication any restriction not clearly expressed in the covenants." *Id.* Rather, "[a]ll doubts and ambiguities are to be resolved in favor of the free use of land." *Id.* Therefore, while clearly expressed restrictions will be upheld, "restrictions that are not clearly expressed will be resolved in favor of the free use of land." *Id.*

The district court found that the bed and breakfast had no exterior visibility. There was only a small plaque with the street address affixed to Defendants' brick lamppost near their driveway, and the photographs introduced into evidence showed what appeared to be a home, not a commercial enterprise. The court found persuasive the testimony of a neighbor who lived across the street and did not know that the Wurmlingers operated a bed and breakfast in their home until Mr. Wurmlinger told him. The court found that the operation is conducted totally within the residence and that guests walking outside to use the hot tub or gather on the patio are normal activities for a residence. The court determined that the words "open to the public" in the CC&R's meant that members of the public could simply walk in the front door, off the street, unannounced and without invitation, to ask for accommodations. Defendants' bed and breakfast does not accept walk-up clientele, but only accepts people with advance reservations arranged over the telephone. It does not have street signs or directional signs inviting the public to walk in and obtain a room. The court found that the Wurmlingers had no employees, which fact was undisputed. Finally, the court found that since 2008 the bed and breakfast has not generated extra vehicular traffic or street parking.

In her brief, Plaintiff cites testimony concerning the operation of the bed and breakfast prior to 2008. In the declaratory judgment claim in her complaint filed on September 23, 2010, she alleged that "[t]he Defendants' operation of the Bed and Breakfast *is* [present tense] in violation of the CC&R's"; she requested an order "declaring that the Defendants' operation of the Bed and Breakfast in Parkwood Place *is* [present tense] a violation of the CC&R's"; and she sought "an Injunction prohibiting the Defendant's [sic] from operating the Bed and Breakfast, or any similar business, in Parkwood Place." (Emphasis added.) The district court found that at the time the complaint was filed, the operation of the bed and breakfast was not in violation of the CC&R's. Plaintiff also argues that Defendants repeatedly referred to the bed and breakfast as a

"business" and the evidence showed it was profitable. A "home occupation" by definition would be a business,[1] and profitable home occupations are not excluded by the CC&R's.

Plaintiff also asserts that "a 'Home Occupation' [is] not a 'Business' as so defined in the neighborhood CC&Rs," but she does not cite to any definition of "business" in the CC&R's. However, the provision regarding home occupations prohibits "any trade or business of any kind," and then excludes from that prohibition "[h]ome occupations of family members" that comply with certain conditions.[2] In context, that would certainly indicate that a home occupation would be a trade or business.

**Arborvitaes.** The CC&R's provide that "[n]o lot, lots or parcels, shall ever be enclosed or fenced by any fence or structure exceeding five (5) feet in height." Based upon the testimony of a surveyor, the district court found that Defendants have thirty-three arborvitaes on their property and that Plaintiff has two on hers. Plaintiff contended that the arborvitaes on Defendants' property constituted a fence under the CC&R's. The district court found that the relevant provision in the CC&R's was unambiguous and that it did not provide that arborvitae or any other trees or landscaping constituted a fence. The restriction as to the height of fences was in a section of the CC&R's titled "Building Restrictions" and in a subsection titled "Building Conditions,"[3] and in the context there was nothing indicating that the word "fence" included foliage.

---

[1] The word "occupation" in this context means "a person's usual or principal work or business, especially as a means of earning a living; vocation." Dictionary.com. *Dictionary.com Unabridged*. Random House, Inc. http://dictionary.reference.com/browse/occupation (accessed: April 30, 2015).

[2] The relevant provision in the CC&R's is as follows:
> 1. <u>Residential Purposes</u>: No lot shall be used except for single family residential purposes and amenities. . . . .
> a) No grantee under any conveyance, owner, tenant, or other person shall at any time conduct, or permit to be conducted on any lot, any trade or business of any kind, either commercial or religious, including, but not limited to, day care, school, nursery, out-patient, treatment, rehabilitation or recovery facilities, nor shall said premises be used for any other purpose whatsoever except for the purpose of a private dwelling or residence for one family. Home occupations of family members, which have no exterior visibility, are not prohibited provided they are conducted totally within the residence, are not open to the public, have no employees and do not generate extra vehicular traffic or street parking.

[3] The provision in the CC&R's is as follows:
> 2. <u>Building Conditions</u>: No building shall be erected except one detached single-family dwelling on each lot which does not exceed two and one half stories in height, together with a private attached garage for not less than two cars. No dwelling, building or other structure shall be moved on to any lot; new construction being required. No tent, trailer, mobile home, boat or other

6

"A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002). In applying that principle, the appellate court cannot reweigh the evidence, judge the credibility of the witnesses, or substitute its view of the facts for that of the trial court. *Argosy Trust ex rel. Andrews v. Wininger*, 141 Idaho 570, 572, 114 P.3d 128, 130 (2005). It is the responsibility of the trial court to judge the credibility of witnesses and weigh conflicting evidence. *Bream v. Benscoter*, 139 Idaho 364, 367, 79 P.3d 723, 726 (2003). The appellate court's role is simply to determine whether there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding that is challenged on appeal. *Miller v. Callear*, 140 Idaho 213, 216, 91 P.3d 1117, 1120 (2004).

Plaintiff does not argue in her brief that the district court's findings are clearly erroneous. She argues that Defendants called their bed and breakfast a "business" and that such business "creates excessive traffic, constant noise, and intrusions from unwelcome patrons who stray onto adjacent properties, block driveways, mail boxes, and causes street congestion." She cites nothing in the record supporting her accusations. "This Court will not search the record for error. We do not presume error on appeal; the party alleging error has the burden of showing it in the record." *Id. at* 218, 91 P.3d at 1122 (citation omitted). Plaintiff has failed to show that the district court erred in finding that she had failed to prove that Defendants were violating the CC&R's.

## III.
### Did the District Court Err in Finding that Defendants' Planting of Trees and Shrubs that Block Plaintiff's View of the River Did Not Constitute a Nuisance?

In her complaint, Plaintiff alleged that "[t]he Defendants have planted shrubs and trees upon their real property which block the Plaintiff's view of the Spokane River and which infringe upon the Plaintiff's real property," and she alleged that such conduct constituted a nuisance. Plaintiff asserts various issues on appeal that can be grouped as asserting that the

---

vehicle or structure shall be used or allowed for human habitation on a temporary or permanent basis on any lot at any time. No lot, lots or parcels, shall ever be enclosed or fenced by any fence or structure exceeding five (5) feet in height. Approval from the Architectural Control Committee shall be required for all fences.

district court erred in finding that Defendants' planting of trees and shrubs that block her view of the river did not constitute a nuisance. She lists as issues the following:

> o) Did the District Court err in its finding that Respondents' [sic] did not purposely and or negligently plant large trees and or shrubs to intentionally block Appellant's view of the Spokane River, which infringes upon Appellant's real property, obstructs her free use of property and interferes with her comfortable enjoyment of life and property?
>
> p) Did the District Court err in its finding that the large trees and or shrubs that were planted intentionally to block Appellant's granted view of the Spokane River, which infringes upon Appellant's real property, obstructs her free use of property, and interferes with her comfortable enjoyment of life and property, should be abated by the Respondents' [sic] and ordered an injunction prohibiting future obstructions of Appellant's view of the Spokane River, and not interfere with her comfortable enjoyment of life and property?
>
> . . . .
>
> z) Did the District Court Honorable Judge Lansing Haynes err by failure to Order an Abatement requiring the Respondents' [sic] to remove any and all shrubs and trees located at or near the parties [sic] common property line which obstruct the Appellant's free use of property, and interferes with the Appellant's comfortable enjoyment of life and property?
>
> aa) Did the District Court Honorable Judge Lansing Haynes err by failure to Enter an Injunction prohibiting the Respondents' [sic] from planting any trees, shrubs, or other vegetation which blocks the Appellant's view of the Spokane River or otherwise obstructs the Appellant's free use of property, and interferes with the Appellant's comfortable enjoyment of life and property?

The district court did not make any findings regarding whether Defendants' actions constituted a nuisance. That issue was submitted to the jury for its decision. On the special verdict form, the jury was asked, "Did the defendants' maintenance of the arborvitae and/or operation of the bed and breakfast constitute a nuisance?" The jury unanimously answered that question, "No."

With respect to Plaintiff's nuisance claim, the court only ruled on her motion for a judgment notwithstanding the verdict. One of the issues she raised in that motion was that the jury should have determined that Defendants maliciously planted the shrubs and trees for the purpose of annoying her and blocking her view. In denying the motions, the district court ruled that "[t]he jury was presented with testimony as to the reasons for planting the arborvitae and other trees" and that "there was substantial and competent evidence to support the jury's verdict in this matter."

On appeal, Plaintiff argues that after she had an attorney write to Defendants about the height of their arborvitaes, Defendants began planting other bushes and trees on their property out of spite in order to block Plaintiff's view of the river. She also contends that Defendants agreed to keep their arborvitaes trimmed to a height of six feet, but allowed them to grow higher out of spite. She argues that Defendants' actions in planting the bushes and trees had no beneficial use to them and that their failure to keep them trimmed to a height of six feet in violation of Mr. Wurmlinger's agreement shows that the plantings were done solely to annoy her.

Plaintiff's contention that Defendants agreed to keep the arborvitae trimmed to a height of six feet is based upon their response to a letter sent them by Plaintiff's attorney. On April 12, 2006, Post Falls sent Mr. Wurmlinger a letter stating that the city had received a complaint regarding a hedge on his property and that the city code required fences and hedges within a side yard setback to be no higher than six feet. Defendants trimmed the arborvitae, and by a letter dated May 8, 2006, the city responded that the pruning satisfied the city. The letter also stated, "It is important that you maintain this height." On May 10, 2006, Plaintiff's attorney sent Defendants a letter stating, among other things, that the height of the arborvitae violated the CC&R's restriction on the height of side fences. On May 17, 2006, Mr. Wurmlinger responded in writing to the attorney's letter and stated with respect to the height of the arborvitae as follows:

> In point 4, it cites that we have large shrubs which are higher than 5 ft. The C.C. & R states that fences and enclosing structures not be higher than 5 ft. Our shrubbery and trees are living plants and do not fall in that category of the C.C. & R's. We recently pruned all of our shrubs which enhanced the view from our neighbors property to the North. The City of Post Falls was satisfied by my pruning. We certainly will control and maintain the shrubbery to its current level (See attached letter from the City of Post Falls regarding pruning and shrubbery).

Plaintiff called Mr. Wurmlinger as her first witness, and during her questioning of him she asked with respect to the letter, "Did you agree to maintain the shrubs at a 6-foot height in a letter dated May 17th, 2006?" He answered, "I agreed to do what the city told me I had to do at the time." The following month, the city amended its ordinance so that the height restriction no longer applied to hedges.

In denying Plaintiff's motion for a judgment notwithstanding the verdict, the district court did not decide whether or not Defendants' actions constituted a nuisance. "[T]he court

cannot weigh the evidence when ruling on a motion for judgment notwithstanding the verdict." *Phillips v. Erhart*, 151 Idaho 100, 106, 254 P.3d 1, 7 (2011). The court merely found that there was substantial and competent evidence to support the jury's verdict. When reviewing a trial court's denial of a motion for a judgment notwithstanding the verdict, "we determine whether there was sufficient evidence to justify submitting the claim to the jury, viewing as true all adverse evidence and drawing every legitimate inference in favor of the party opposing the motion for a directed verdict." *Todd v. Sullivan Constr. LLC*, 146 Idaho 118, 124, 191 P.3d 196, 202 (2008). The jury could have reasonably found that Defendants did not plant the bushes and trees for the purpose of maliciously annoying Plaintiff by blocking her view of the river. The district court did not err in holding that the evidence was of a sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper.

**IV.**
**Did the District Court Err in Failing to Find that Defendants' Actions Caused Plaintiff Emotional Distress?**

In her complaint, Plaintiff alleged that Defendants negligently caused her emotional distress. The jury was asked, "Did the defendants' maintenance of the arborvitae and/or operation of the bed and breakfast, and/or defendants' alleged defamatory statements to neighbors or police negligently inflict emotional distress on plaintiff?," and the jury unanimously answered that question, "No." Plaintiff states as an issue on appeal:

> l) Did the District Court err in its finding that the Respondents' violation of the neighborhood CC&Rs by operating a business, the River Cove Bed and Breakfast and wedding event facility, and the arrest of the Appellant after trimming said [sic] arborvitae hedge, along with constant harassment, including many false allegations of crimes reported by the Respondents, did not cause extreme negligent emotional distress on the Appellant?

The district court did not make any such finding, and Plaintiff did not raise this issue as part of her motion to set aside the judgment or to grant her a judgment notwithstanding the verdict. Therefore, there was no ruling by the district court on this issue. It was the jury who concluded that Plaintiff had failed to prove her claim of negligent infliction of emotional distress.

In her brief on appeal, Plaintiff recounts her version of the evidence, but she does not contend that there was insufficient evidence to support the jury's verdict. It was up to the jury to decide what witnesses were credible, the weight to be given their testimony, and the reasonable

10

inferences to be drawn from the evidence. *State v. Thomas*, 157 Idaho 916, 919, 342 P.3d 628, 631 (2015). "The presumption is in favor of an impartial and considerate action on the part of a jury, and we must be convinced affirmatively before we could, by any rule of law, be permitted to question such presumption." *Cox v. Northwestern Stage Co.*, 1 Idaho 376, 386 (Terr. Sup. Ct. 1871). There was conflicting evidence in this case, and it was up to the jury to decide the credibility of the witnesses and the weight to be given their testimony. Plaintiff has not pointed to anything indicting that the members of the jury did not faithfully perform their duty when they concluded that Plaintiff had failed to prove her claim of negligent infliction of emotional distress.

## V.
## Did the District Court Err in Finding that Plaintiff Committed a Timber Trespass and in Awarding Damages?

Idaho Code section 6-202 sets forth a cause of action for timber trespass.[4] With respect to this cause of action, the district court instructed the jury as follows:

INSTRUCTION NO. 18
On the defendants' claim that plaintiff damaged their trees and arborvitae, the defendants have the burden of proof on each of the following propositions:
1. That defendants owned certain trees and/or arborvitae; and
2. That the trees and/or arborvitae were located on the defendants' property; and
3. That plaintiff damaged or destroyed said trees and/or arborvitae; and
4. That defendants have sustained damages.
You will be asked the following question on the jury verdict form:
**Did plaintiff damage or destroy defendants' arborvitae and/or spruce tree?**

---

[4] Idaho Code section 6-202 states as follows:

Any person who, without permission of the owner, or the owner's agent, willfully and intentionally enters upon the real property of another person which property is posted with "No Trespassing" signs or other notices of like meaning, spaced at intervals of not less than one (1) notice per six hundred sixty (660) feet along such real property; or who willfully and intentionally cuts down or carries off any wood or underwood, tree or timber, or girdles, or otherwise willfully and intentionally injures any tree or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated grounds; or on the commons or public grounds of or in any city or town, or on the street or highway in front thereof, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor or fifty dollars ($50.00), plus a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails.

If you find from your consideration of all the evidence that each of these propositions has been proved, then you should answer this question "Yes." If you find from your consideration of all the evidence that any of these propositions has not been proved, then you should answer this question "No."

INSTRUCTION NO. 19

Any person who willfully, intentionally, and without permission of the owner, girdles or otherwise injures any tree on the land of another person, without lawful authority, is liable to the owner of such land for the amount of actual damages which may be assessed therefor.

INSTRUCTION NO. 20

If the jury decides that the defendants are entitled to recover from the plaintiff on their counterclaim for damage to the defendants' trees and/or arborvitae, the jury must determine the amount of money that will reasonably and fairly compensate the defendants for any actual damages proved to be proximately caused by the plaintiffs actions.

The elements of actual damage to defendants' trees and arborvitae are:

The difference between the fair market value of the tree or the arborvitae immediately before the occurrence, and its fair market value without repair after the occurrence and, the loss of utility or contribution of that tree or arborvitae to defendants' real property.

INSTRUCTION NO. 21

The term "fair market value" means the cash price at which a willing seller would sell and a willing buyer would buy the subject property, in an open marketplace free of restraints, taking into account the highest and most profitable use of the property.

It presumes that the seller is desirous of selling, but is under no compulsion to do so, and that the buyer is desirous of buying, but is under no compulsion to do so.

It presumes that both parties are fully informed, knowledgeable and aware of all relevant market conditions and of the highest and best use potential of the property, and are basing their decisions accordingly.

On the special verdict form, the jury unanimously answered "Yes" to the questions: "Based upon the evidence presented to you, do you find that the arborvitae are trees?" and "Did defendants prove that plaintiff committed timber trespass?" The jury assessed damages for the timber trespass in the sum of $17,000.

Plaintiff lists various issues asserting that the district court erred in finding that she committed a timber trespass and in awarding damages. She lists the issues as follows:

f) Did the District Court err in its finding that the arborvitae shrubs that form a hedge, as mentioned above, are to be considered trees?

12

. . . .

g) Did the District Court err in its finding that the arborvitae hedge is solely located on the Respondents' property when a mutual ownership was evident on both surveys?

h) Did the District Court err in its finding that Appellant should be accused and assessed damages for intentionally and willfully committed Timber Trespass to the property of Respondents wherein I.C. § 6-202 allowing for treble damages would have applied when a dual ownership of the arborvitae (shrub) hedge, which is located on or near the adjoining property line of both the Appellant and Respondents, is evident?

i) Did the District Court err in its finding that the Appellant should be assessed "Timber" damages for property (arborvitae hedge) that she equally owns, after the Appellant trimmed said arborvitae hedge to the agreed upon height, which was previously cut four years prior to the same height by the Respondent at which time it was neither damaged or destroyed?

j) Did the District Court err in its finding that the Appellant has intentionally, willfully or negligently damaged and/or destroyed the ten (10) arborvitae shrubs in question?

. . . .

n) Did the District Court err in its finding that the Respondents' Survey was properly signed and introduced into evidence?

. . . .

r) Did the District Court err in allowing excessive awards of damages and attorney fees to the Respondents' [sic]?

s) Did the District Court err in determining whether damages were correctly assessed in accordance with the finding for and the allowable amount of awards of damages and attorney fees to the Respondents?

The district court did not make any findings regarding whether Plaintiff committed a timber trespass or the amount of damages. Those issues were submitted to the jury for its decision. The court only ruled upon Plaintiff's motion to set aside the judgment under Rule 60(b) for fraud upon the court because Defendants' counsel submitted a survey into evidence that the surveyor had not signed and dated. She also argued that absent such survey, the evidence would show that some of the arborvitae were on her property.

The district court held that Idaho Code section 54-1215(1)(b), which requires a surveyor to seal, sign, and date all surveys presented to a client, was not an evidentiary rule of admissibility. The court stated that the jury heard testimony about the methods used by the surveyor and how his measurements, recordings, and findings were accurately transferred to the survey. The court concluded that offering the survey into evidence did not constitute fraud upon the court. The court also held that there was substantial and competent, albeit conflicting,

evidence presented to the jury as to the location of the arborvitaes. Plaintiff testified that she had her brother-in-law cut the arborvitaes down to a height of six feet. The court therefore denied the motion to set aside the judgment for fraud upon the court based upon offering the survey into evidence and her motion for a judgment notwithstanding the verdict based upon Plaintiff's contention that at least some of the arborvitaes were on her property.

Defendants presented expert testimony that the difference between a shrub and a tree is that a shrub is capable of growing to a height of only fifteen feet, while a tree is capable of growing taller and that the species of arborvitaes planted by Defendants was capable of growing to a height of twenty feet. Defendants presented expert testimony of a surveyor showing where the arborvitaes were in relation to the parties' common boundary line, and Plaintiff presented expert testimony as to her contention in that regard. The district court did not err in holding that the evidence was of a sufficient quantity and probative value that reasonable minds could conclude that the verdict finding Plaintiff liable for timber damages was proper.

Plaintiff contends that the district court erred in assessing damages, but it did not do so. The jury determined damages pursuant to the evidence and jury instructions to which Plaintiff did not object. The issue of whether the damages were excessive was never presented to the district court. Therefore, there is no basis for concluding that the district court erred in allowing an allegedly excessive award of damages. This Court will not review an alleged error by the trial court where the record does not show that the court ever ruled on the issue. *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 368–69, 179 P.3d 323, 331–32 (2008).

## VI.
### Did the District Court Err in Submitting to the Jury Defendants' Claim of Negligent Infliction of Emotional Distress?

In their initial counterclaim, Defendants alleged the claims of intentional infliction of emotional distress and negligent infliction of emotional distress. Later, at Defendants' request, the district court entered an order dismissing with prejudice Defendants' counterclaim of negligent infliction of emotional distress. Defendants later changed attorneys, and they filed an amended answer and counterclaim in which they alleged a claim of intentional infliction of emotion distress, but not negligent infliction of emotional distress.

Plaintiff alleges as an issue on appeal,

14

k) Did the District Court Honorable Judge Lansing Haynes err in his finding that the Respondents' asserted legal claims for "Negligent Infliction of Emotional Distress" during the trial were properly disclosed, when in fact, the District Court Honorable Judge Lansing Haynes had previously dismissed the Respondents' original claim of Negligent Infliction of Emotional Distress on March 22, 2011 with Prejudice?

The district court held a pretrial conference one week before trial. Prior to that conference, the parties filed written statements of the issues to be tried. In their statement, Defendants alleged that Plaintiff "harassed them with unfounded complaints to the police, harassed their guests, trespassed on their property, and made defamatory comments about them to others." During the pretrial conference, the court asked Defendants' counsel whether the claim that Plaintiff harassed Defendants was an infliction of emotional distress claim. Defendants' counsel stated that it was, and the court asked, "Is this an intentional and/or negligent infliction?" Defendants' counsel answered, "We propose instructions on both." The court then asked Plaintiff if there was any record she wanted to make, and she responded, "No, your Honor." The court then stated that Defendants' counterclaims were intentional and/or negligent infliction of emotional distress, common law trespass, and timber trespass. The court again asked Plaintiff if she wanted to make any record on that, and she again stated that she did not. The court then stated: "So with those clarifications, it looks like we have some consensus on what is the existence of the defendants' claims. Anything about the claims or issues that the Court's brought up to this point that plaintiff would like to get clarified or remark about?" Plaintiff responded, "No, your Honor."

At the conclusion of the presentation of evidence at the trial, the district court gave the parties its proposed jury instructions. They included an instruction that addressed "defendants' counterclaim of negligent infliction of emotional distress against the plaintiff" and set forth the elements that Defendants must prove to recover on that claim. During the jury instruction conference, the court asked, "Does the plaintiff have any objection to [the] Court's proposed jury instructions or special verdict form or the failure to give any of plaintiff's proposed instructions?" and told Plaintiff, "Now is the time to make those objections." Plaintiff responded, "No, your Honor."

The order dismissing with prejudice Defendants' counterclaim of negligent infliction of emotional distress was not a final judgment because it did not resolve all claims in this case and

15

was not certified as final pursuant to Rule 54(a)(1) of the Idaho Rules of Civil Procedure. I.R.C.P. 54(a) (2010). It was simply an interlocutory order that could later be modified, amended, or reversed. *In re Doe*, 156 Idaho 103, 107, 320 P.3d 1262, 1266 (2014). Although Defendants' amended counterclaim did not allege a claim for negligent infliction of emotional distress, "[w]hen issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." I.R.C.P. 15(b). By failing to object at the pretrial conference that Defendants' claim of negligent infliction of emotional distress was to be tried to the jury, Plaintiff consented that such issue would be tried. The district court did not err in submitting that claim to the jury.

## VII.
## Did the District Court Err in Instructing the Jury?

Plaintiff contends that the district court erred in instructing the jury. She states as issues on appeal:

> m) Did the District Court err in its finding that the jury instructions and the special verdict form were properly amended and submitted within the time frame as specified under I.R.C.P. 51(a)(l)?
> y) Did the District Court Honorable Judge Lansing Haynes err by giving the jury improper instructions?

At the conclusion of the presentation of evidence at the trial, the district court gave the parties its proposed jury instructions. During the jury instruction conference, the court asked, "Does the plaintiff have any objection to [the] Court's proposed jury instructions or special verdict form or the failure to give any of plaintiff's proposed instructions?" and told Plaintiff, "Now is the time to make those objections." Plaintiff responded, "No, your Honor." By failing to object, Plaintiff cannot raise as an issue on appeal the court giving or failing to give any jury instruction. *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009).

## VIII.
## Was Plaintiff Denied Her Constitutional Rights?

Plaintiff lists as issues on appeal the following:

q) Did the District Court err in denying Appellant's invocation of the Fourteenth Amendment right to Due Process, which prohibits state and local governments from depriving persons of life, liberty, or property without certain steps being taken to ensure fairness and to recognize her substantive and procedural rights?
t) Did the District Court err by depriving Appellant her rights by violating 42 USC § 1983—Civil action for deprivation of rights and due process?

Plaintiff contends that she was denied due process of law because:

1.) Judge Haynes allowed Appellants [sic] attorney to quit within eight (8) weeks prior to trial, leaving Appellant vulnerable for bias and prejudice. Appellant informed the judge that trial deadlines had passed and that she could not afford another attorney; 2.) Judge Haynes should have insisted on a site evaluation so the jury could visually see the condition of the arborvitae, the property layout of the homes and proximity of where the river, park, and homes were located in relationship to one another; 3.) Judge Haynes did not allow Appellants [sic] timely disclosed witness Leonard Benes to testify on behalf of Appellant, a crucial factor to the Appellants [sic] defense [citation to record]; 4.) Judge Haynes allowed the Respondents to submit evidence at trial that was never disclosed to Appellant and was in violation of the November 8, 2012, deadline per Court Order [citation to record]; 5.) Judge Haynes allowed the Jury Instructions to be altered from their original state as quoted within the Idaho Codes; 6.) Judge Haynes did not grant Injunctions to Appellant for Abatement and PWP CC&R violations as requested.

(Citations to record omitted.)

Due process requires the opportunity upon reasonable notice for a fair hearing before an impartial tribunal. *Miller v. St. Alphonsus Reg'l Med. Ctr., Inc.*, 139 Idaho 825, 835, 87 P.3d 934, 944 (2004). Plaintiff's alleged due process violations contain only two citations to the record.

The first is the district court's refusal to permit Plaintiff to call Leonard Benes as a witness. When the city sent a letter to Mr. Wurmlinger regarding the height of the arborvitaes, he took pictures of arborvitaes growing on other lots in the subdivision that were taller than six feet, including arborvitaes growing on Mr. Benes's lot. Plaintiff contended that she wanted his testimony to prove that the hedge was a fence. The court refused to allow his testimony because Mr. Benes was untimely disclosed as a witness and Plaintiff wanted him to testify regarding photographs that had not been admitted into evidence or timely disclosed as exhibits. Plaintiff has not presented any argument or authority showing that the failure to permit Mr. Benes to testify violated due process.

17

The second citation to the record involves evidence that the district court should not have permitted Defendants to submit during the trial because it was untimely disclosed. In support of that alleged error, Plaintiff cites to two pages of a pretrial motion in limine she filed to exclude a list of items of evidence because they were irrelevant, hearsay, or lacked authentication and because "the List of Exhibits was introduced after the Pre-trial Order for discovery [was] allowed." Plaintiff did not cite to any place in the record indicating that the court ever ruled on the motion or how it ruled, nor did she cite to any place in the record showing that any of such evidence was admitted during the trial. We will not consider assignments of error not supported by argument and authority in the opening brief and citations to the relevant parts of the appellate record supporting the argument. *Cummings v. Stephens*, 157 Idaho 348, 362, 336 P.3d 281, 295 (2014); *VanderWal v. Albar, Inc.*, 154 Idaho 816, 822, 303 P.3d 175, 181 (2013). Therefore, we will not address Plaintiff's other assertions regarding due process violations.

## IX.
### Did the District Court Err in Awarding Attorney Fees to Defendants?

Plaintiff listed as an issue on appeal,

r) Did the District Court err in allowing excessive awards of . . . attorney fees to the Respondents' [sic]?

She did not present any argument or authority regarding that issue. "We will not consider assignments of error not supported by argument and authority in the opening brief." *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006).

## X.
### Did the District Court Err in Failing To Recuse Itself?

Plaintiff contends that the district judge was biased against her. Her list of assignments of error are the following:

u) Did the District Court Judge Lansing Haynes express an "appearance of partiality" against Greenfield during the proceedings?
v) Did the District Court Honorable Judge Lansing Haynes err by not disqualifying himself, as well as his law clerk, Schuyler A. Pennington, from the court proceedings do [sic] to their affiliation with the Knights Of Columbus, an inclusive Catholic organization of men, wherein Eric Wurmlinger is also affiliated

18

with such organization, therefore causing prejudicial bias within the judicial outcome of the case?

w) Did the District Court Honorable Judge Lansing Haynes err by allowing the Defendants 'Unclean hands' to mislead the trial court into believing that certain Trial Exhibits were factual, wherein said exhibits were submitted "Incomplete" or contained "Unacceptable" information?

x) Did the District Court base its findings upon unsubstantiated and incompetent evidence from the Respondents' [sic], and did that evidence support the district courts [sic] conclusions of law wherein the Appellant was prejudiced by said evidence?

. . . .

bb) Did the District Court Honorable Judge Lansing Haynes commit Fraud Upon the Court as witnessed and verified by the Appellant on December 30, 2013, after Appellant viewed her case file, wherein the Honorable Judge Lansing Haynes commented in his case file notes "The only issue that concerns me is the N.I.E.D. (Negligent Infliction of Emotional Distress) claim being dismissed ... We can play up the former counsel's decision and the no objection to putting it to the jury later on" wherein Judge Haynes openly admits by acknowledging concerns and states "We can Play up ..." the N.I.E.D. claim that Judge Haynes had dismissed with prejudice a year and a half prior to trial?

"Judicial rulings, standing alone, do not constitute a valid basis for a claim of bias or partiality." *State v. Hairston*, 133 Idaho 496, 508, 988 P.2d 1170, 1182 (1999). "Whether it is necessary for a judicial officer to disqualify himself in a given case is left to the sound discretion of the judicial officer himself." *Bradbury v. Idaho Judicial Council*, 149 Idaho 107, 113, 233 P.3d 38, 44 (2009). In the absence of a motion for disqualification, we will not review the issue of whether a judge should have disqualified himself or herself because there is no decision by the judge and no factual record developed from which grounds for disqualification can be discerned. *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 563, 568, 249 P.3d 362, 367 (2011).

In this case, the only issue raised by Plaintiff to the trial court involved the court's membership in the Knights of Columbus. Both the court and Mr. Wurmlinger were members of that organization. Although Plaintiff did not move for disqualification, she raised the issue in her motion for reconsideration of the denial of her motions to set aside the judgment and to grant a judgment notwithstanding the verdict. Judge Haynes explained that he was not a parishioner of the same church as Mr. Wurmlinger; that he had attended mass there a couple times a year, but his only contact with Mr. Wurmlinger was hearing him say "Good morning" when handing the judge a church bulletin and the judge responding "Thank you" when he took it; that he and Mr. Wurmlinger were members of separate councils of the Knights of Columbus; that the councils do

19

not hold joint meetings; that the judge had not been to a meeting of the council for three years; and that neither he nor members of his family had ever served on any committees with the Wurmlingers. Assuming that the Plaintiff raising the issue could be construed as a motion for disqualification, Judge Haynes did not err in denying that motion.

## XI.
### Are Defendants Entitled to an Award of Attorney Fees on Appeal?

Defendants seek an award of attorney fees on appeal pursuant to the provisions of the CC&R's, Idaho Code section 6-202, and Idaho Code section 12-121. Article III, Section 1 of the CC&Rs provides that, "In any suit or action brought to reinforce these covenants, the prevailing party shall be entitled to recover costs and reasonable attorney fees from the other party." Idaho Code section 6-202 provides that a person who commits a timber trespass may be assessed "a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails." Idaho Code section 12-121 provides for the award of attorney fees to the prevailing party in any civil action, but in normal circumstances this Court will only award attorney fees on appeal under the statute "when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Defendants are entitled to an award of attorney fees on appeal in defending against the alleged violations of the CC&R's under Article III, Section 1, of that document. They are also entitled to an award of attorney fees on appeal for defending their award of damages for timber trespass pursuant to Idaho Code section 6-202. Also, because we find that Plaintiff's remaining issues on appeal were pursued frivolously, unreasonably, or without foundation, Defendants are entitled to an award of attorney fees for defending those issues pursuant to Idaho Code section 12-121.

## XII.
### Conclusion.

We affirm the judgment of the district court, and we award respondents costs and attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**