**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50997**

| | |
|---|---|
| **JOE ROWETT, an individual,** | ) |
| | ) **Filed: May 3, 2024** |
| **Plaintiff-Respondent,** | ) |
| | ) **Melanie Gagnepain, Clerk** |
| **v.** | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| **INFINITY POOLS, LLC, an Idaho** | ) **OPINION AND SHALL NOT** |
| **limited liability company,** | ) **BE CITED AS AUTHORITY** |
| | ) |
| **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

Judgment awarding damages and attorney fees, <u>affirmed</u>.

Points Law, PLLLC; Michelle R. Points, Boise, for appellant. Michelle R. Points argued.

Givens Pursley, LLP; Bradley J. Dixon, Boise, for respondent. Jason J. Blakley argued.

---

GRATTON, Chief Judge

Infinity Pools, LLC (Infinity) appeals from the district court's judgment awarding damages and attorney fees to Joe Rowett. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Rowett contracted with Infinity for the construction of an infinity-style pool and spa in his backyard. Infinity finished the pool, but according to testimony at trial there were defects in the construction. Rowett filed an action against Infinity alleging breach of contract, breach of express warranty, breach of implied warranty, breach of implied covenant of good faith and fair dealing, negligence, and violation of the Idaho Consumer Protection Act, Idaho Code §§ 48-601 to 48-619. Rowett claimed there was a leak in the pool, the pebble finish was deteriorating, and the tiles along the trough did not have waterproofing sealant causing blemishes within the grout. Infinity claimed

1

the work was done satisfactorily and that any problems that occurred were due to Rowett's improper maintenance of the pool, including leaving the pool empty for two months, thus nullifying any warranty claims.

A bench trial was held, and each party presented expert testimony regarding the installation and maintenance of the pool. The district court entered its findings of fact and conclusions of law awarding damages to Rowett in the amount of $50,512.50, calculated as follows: $38,000.00 for improper PebbleTec finish installation; $16,012.50 for the investigation and repair of the main drain; $4,500.00 for waterproofing around the catch trough; less $8,000.00 Rowett withheld from the contract price. Infinity appeals.

## II.

## STANDARD OF REVIEW

Where a trial court sits as a finder of fact without a jury, the court is required to enter findings of fact and conclusions of law. Idaho Rules of Civil Procedure 52(a); *Estate of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to the findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps. Inc.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

## III.

## ANALYSIS

Infinity challenges the district court's findings that: (1) the PebbleTec finish was improperly installed, (2) the pool leaked, and (3) the efflorescence on the stucco walls of the catch trough and spa tiles was caused by defective installation. Further, Infinity argues that the district court abused its discretion in holding that Rowett's warranty claims were not barred by the limitations clause contained in the contract. Lastly, Rowett and Infinity request attorney fees.

**A.      Sufficiency of Evidence**

**1.      PebbleTec finish installation**

Infinity contends the district court erred when it found the PebbleTec finish was improperly installed. Specifically, Infinity argues the problems associated with the PebbleTec finish were due to Rowett's failure to maintain the correct chemical balance in the pool.

The district court found that soon after installation, Rowett noticed that the pebble finish was degrading. Rowett's retained expert, Derek Downey, inspected the pool and spa. He identified that the pool's interior PebbleTec finish had been installed incorrectly and was breaking down. At trial, Downey pointed to areas of overexposed pebble, underexposed pebble, and crumbling cement paste. He explained why he considered errors during installation to be the only plausible explanation for these wide variations in the pool's finish. By contrast, Scott Heusser, Infinity's expert, opined that the breakdown of pebble and cement paste was attributable to aggressive water and, by extension, Rowett's failure to properly manage the water chemistry in his pool. Downey disagreed, stating that if an aggressive water problem was the issue, then it would have deteriorated the PebbleTec finish evenly throughout the pool and not just certain areas. Further, Downey testified that, to reach a conclusion of aggressive water, one would use the Langelier Saturation Index, or LSI, and the records used by Heusser to reach his aggressive water conclusion lacked sufficient data points to perform such an analysis. The district court held, "Having carefully considered the testimony from both experts, the Court finds Downey's theory far more convincing."

On appeal, Infinity challenges the district court's finding that the PebbleTec finish was installed incorrectly. Specifically, Infinity suggests that Downey's testimony was not sufficient to find the damages were not caused by Rowett's lack of chemical maintenance of the water. Simply arguing the existence of conflicting evidence does not demonstrate clear error. This Court does

3

not reweigh the evidence, judge the credibility of the witnesses, or substitute its view of the facts for that of the trial court. *Greenfield v. Wurmlinger*, 158 Idaho 591, 598, 349 P.3d 1182, 1189 (2015). Accordingly, Infinity has failed to show the district court erred in finding the PebbleTec finish was installed incorrectly by Infinity. We affirm the district court's award of damages relating to the costs associated with replacing the PebbleTec finish.

### 2. Main drain leakage and repair

Infinity contends that the district court's finding that the pool had structural infirmities that prevented it from holding water is not supported by the testimony or evidence presented at trial. Specifically, Infinity argues there is no competent evidence that the pool leaked prior to Rowett draining the pool.

Rowett hired C.H.I. Pools to run a leak test on his pool when he became concerned that the pool was not holding water. C.H.I. conducted a test and found that the pool was leaking roughly fourteen gallons of water an hour. To confirm the pool was leaking, C.H.I. sought a second opinion from American Leak Detection. To facilitate American Leak Detection's testing, the pool and spa were drained in late November 2020 and remained empty until early February 2021. American Leak Detection found no indication of a leak. After yet more leak-detection efforts, an employee of C.H.I. saw a visible crack around the pool's main drain. Cutting into it, he discovered that a silty sediment called "rebound," not solid concrete, surrounded the main drain. He replaced the drain and encased it in fiber-reinforced concrete. The pool held water since the main drain was replaced in May 2022. The district court, after weighing all the evidence, was persuaded that the pool and spa, as constructed by Infinity, "more probably than not had structural infirmities that prevented them from holding water as they should have. It is clear, though, that the pool has held water appropriately since its main drain was replaced in May 2022, so that problem has been successfully remedied."

On appeal, Infinity challenges the district court's finding that the pool did not hold water. Specifically, Infinity argues the finding was based on Rowett's testimony alone and was unsupported by other testimony or corroborating evidence. Infinity asserts the evidence presented by C.H.I. indicates that there was no leak in the pool. However, the district court concluded that after the drain was fixed, there was no longer a leak. Regardless, C.H.I.'s employee testified that there was a structural issue with the drain being improperly installed by Infinity "so I knew it was leaking there." There is ample evidence in the record that the drain was not properly installed and

4

that it leaked. Thus, Infinity has failed to show the district court erred in awarding damages for the cost of repair of the drain.

Infinity's argument essentially asks us to reweigh the evidence presented at trial relating to the structure of the pool and the testimony provided by the expert witnesses at trial. As noted, it is well-established that appellate courts in Idaho do not reweigh evidence. Accordingly, Infinity has failed to show the district court erred in finding that there was a structural issue in the installation of the pool. We affirm the district court's award of damages relating to the drain installation issue.

### 3. Waterproofing around the catch trough

Infinity contends the district court erred when it found that Infinity failed to install waterproofing around the catch trough. Specifically, Infinity argues its expert testified that the waterproofing (Basecrete) was installed.

The district court found that, early on, Rowett noticed there was oxidation or discoloration on the tile, grout, and pebble of the vanishing edge. Downey's inspection of the pool and spa identified that waterproofing was not installed around the trough and the glass tile on the spa did not have an opaque backing, resulting in needless cosmetic defects. Downey testified the catch trough lacked the necessary waterproofing, causing water to seep through small cracks in the stucco, leaving an unsightly white residue. In addition, Downey testified that because the spa tile was installed without opaque backings, efflorescence and construction marks were visible through the glass. The district court found "[t]his testimony was convincing, especially when contrasted against the conclusory explanation proffered by Infinity's expert." Nevertheless, on appeal, Infinity continues to rely on its expert's testimony. To that end, Downey testified: "I believe Mr. Heusser had identified that Basecrete was installed. And my response: That if Basecrete was installed it either failed or had not performed correctly."

Again, simply showing the existence of conflicting evidence does not demonstrate clear error and we will not reweigh the evidence or substitute our view of the facts for that of the trial court. Accordingly, Infinity has failed to show the district court erred in finding the waterproofing was installed incorrectly by Infinity. We affirm the district court's award of damages relating to the costs associated with repairing the catch trough.

5

**B.      Warranty Claims**

Infinity argues that the district court abused its discretion in holding that Rowett's warranty claims were not barred by the limitations clause contained in the contract. Specifically, Infinity asserts the damage to Rowett's pool and spa was the result of Rowett's failure to properly maintain his pool and/or the pool being drained, thus limiting the warranty of the work completed by Infinity. A breach-of-contract claim requires proof of "(a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Path to Health, LLP v. Long*, 161 Idaho 50, 57, 383 P.3d 1220, 1227 (2016). Claims for breach of warranty are no exception. Here, the first element is undisputed. The parties had a contract for Infinity to construct an infinity-style pool and spa at Rowett's residence. The remaining elements were in dispute in the district court. When a contract requires the performance of personal services, a warranty is implied that the services will be performed in a workmanlike manner. *Melichar v. State Farm Fire & Cas. Co.*, 143 Idaho 716, 722, 152 P.3d 587, 593 (2007).

Turning first to the implied warranty claims, the district court awarded Rowett $50,512.50, calculated as follows: $38,000 for improper PebbleTec finish installation; $16,012.50 for the investigation and repair of the main drains; $4,500 for waterproofing around the catch trough; less the $8,000 withheld from the contract price. The district court found, under an implied warranty, that Infinity did not complete the pool in a workmanlike manner. The district court stated:

> Infinity was obligated to construct the pool and spa in a workmanlike manner but failed in some respects to do so. Infinity (i) installed the PebbleTec finish improperly, with the result that it degraded within weeks of its installation, (ii) constructed a pool and spa whose main drains leaked, (iii) failed to install waterproofing around the catch trough, and (iv) installed clear glass tile around the spa without an opaque backing. These deficiencies caused the pool and spa to either not function properly or not look as good as they should have. They damaged Rowett. He is entitled to recover the costs already incurred, or that remain to be incurred, to remedy these deficiencies, less the portion of the contract price that he withheld from Infinity: $8,000.

As for the express warranty claims, the district court awarded the same damages for the PebbleTec finish and drain issues, but excluded the waterproofing claim, as the court found that Rowett had not shown that the problem manifested itself within the applicable one-year warranty period.

6

The district court examined three clauses of the contract that contain express warranties. First, "the pool shell will remain structurally sound for a period of 10 years." "Structurally sound" is defined as:

> [M]aintaining the structural integrity of the concrete pool shell so as to withstand regular and customary loads without cracking or causing water loss. Should it be determined that the shell is not structurally sound, Infinity Pools LLC will, at no cost to the original owner, perform repairs necessary to restore its structural integrity and water holding ability. The term structurally sound therefore does not extend to cover items external to the pool's concrete shell, such as tile, plaster, plumbing, electrical components, filter, heaters, decking, or any other pool accessories.

Second, "[a]ll workmanship, construction and pool equipment installed by Infinity Pools LLC are covered by the one-year Protection Warranty to the original owner from the original start-up date by Infinity Pools, LLC." And third, the pool and spa's aggregate finish is warranted for five years.

These warranties are limited. They exclude any defects caused by the owner's lack of proper pool maintenance and any damage caused by third parties. In addition, the contract requires that the pool "be kept full of water at all times except for purposes of repair or maintenance not to exceed two (2) days." Finally, the contract states: "Discoloration, staining, check cracks, cracks, and imperfections are inherent in pool deck and plaster, and concrete products. Only cracks exceeding in width the thickness of a nickel will be repaired by Contractor at no cost to the original consumer within the limited warranty period."

Infinity argues that the district court erred in awarding damages to Rowett, claiming that Rowett failed to properly maintain the pool, including principally leaving the pool empty for two months. As to improper maintenance, Infinity fails to support its claim or show that any improper maintenance contributed in any way to the defects for which damages were awarded. Infinity, in a footnote, cites to the testimony from Heusser that the "pool hasn't been chemically cared for well." The district court noted that "Heusser opined that the breakdown of pebble and cement paste is attributable to aggressive water, and, by extension, Rowett's failure to properly manage the water chemistry in his pool." Contrasting Heusser's opinion with the extensive testimony from Downey, the district court found Downey's theory far more convincing. Infinity's claim that the district court did not address the maintenance issue is inaccurate.

In regard to the fact that Rowett left the pool empty for two months, again, Infinity argues that all warranties were thus excluded. The district court rejected this claim, stating:

7

> The Court rejects Infinity's contention that the ten-year warranty doesn't provide coverage because the pool was left empty from late November 2020 to early February 2021. Though the contract requires Rowett not to leave the pool empty for longer than two days, (Finding of Fact 6, *supra*), the water-loss issues long predate the draining of the pool and, thus, aren't causally connected to it. Indeed, no loss for which the Court concludes a warranty provides coverage has any causal connection to the draining of the pool.

We agree with the district court. Infinity cites no authority for its position that draining the pool, having no connection to defects in Infinity's workmanship, voids the warranties.

## C.    Attorney Fees

Infinity requests attorney fees on appeal pursuant to I.C. § 12-120(3) and Idaho Appellate Rule 41. Infinity is not the prevailing party and is not entitled to attorney fees. Rowett also requests attorney fees on appeal pursuant to I.C. §§ 12-120(3), 12-121, I.A.R. 40, and I.A.R. 41.

Rowett does not present any substantive argument in support of his request for attorney fees pursuant to I.C. § 12-120(3). This Court will not consider issues on appeal, including a request for attorney fees, which are not supported by propositions of law, authority, or argument. *Bingham v. Montane Resource Assocs.*, 133 Idaho 420, 427, 987 P.2d 1035, 1042 (1999). Therefore, this Court cannot hold the statutory requirements of I.C. § 12-120(3) have been met to award attorney fees pursuant to the statute. Simply having a contractual agreement, without providing the Court with information regarding the transaction, will not automatically provide relief to the prevailing party under this statute. The facts may indicate this is a commercial transaction; however, we cannot infer that the statutory requirements have been met without additional argument presented on appeal.

Further, Rowett cites I.C. § 12-121, I.A.R. 40, and I.A.R. 41, and argues "an award of attorney fees under this statute is appropriate if the appeal simply invites this court to second guess the trial court on conflicting evidence." *Beckstead v. Price*, 146 Idaho 57, 69, 190 P.3d 876, 888 (2008). Attorney fees are awarded to the prevailing party if "the Court determines that the action was brought or pursued frivolously, unreasonably or without foundation." *Baker v. Sullivan*, 132 Idaho 746, 751, 979 P.2d 619, 624 (1999). In this case, because Infinity only asks us to second-guess the trial court on conflicting evidence, contrary to well-established principles of appellate review, Rowett is entitled to an award of attorney fees on appeal pursuant to I.C. § 12-121.

**IV.**

**CONCLUSION**

For the reasons set forth above, we affirm the district court's judgment in favor of Rowett and against Infinity. Rowett is awarded attorney fees and costs on appeal.

Judge LORELLO and Judge TRIBE **CONCUR**.