923 P.2d 434

**Booker BROWN and Pamela J. Selland–Brown, husband and wife, Plaintiff–Appellant,**

v.

**John H. PERKINS and Carol J. Perkins, husband and wife, and Andrew B. Artis and Julie J. Artis, husband and wife, Defendants–Respondents.**

No. 21517.

Supreme Court of Idaho,
Boise, March 1996 Term.

Aug. 2, 1996.

Rehearing Denied Oct. 2, 1996.

Orndorff & Trout, Boise, for appellant. Kim J. Trout argued, Boise.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for respondents. Stephen J. Bradbury argued, Boise.

McDEVITT, Chief Justice.

This is an action seeking the enforcement of restrictive covenants applicable to a residential subdivision.

## I.

## BACKGROUND

The following facts are not in dispute. Appellants, Booker Brown and Pamela J. Selland–Brown (the Browns), and respondents, Andrew B. Artis and Julie J. Artis (the Artises) own adjacent lots in the Trolley Estate Subdivision (the Subdivision), in Ada County. The Browns own lot 27, and the Artises own lot 26. The Artises' home was built on lot 26 by respondent, John H. Perkins (Perkins).

All homes in the Subdivision are subject to a set of restrictive covenants entitled "Declaration of Covenants, Conditions and Restrictions for Trolley Estates Subdivision," (the Restrictive Covenants). The relevant portion of the Restrictive Covenants provides that each house is subject to setback requirements. "The setbacks shall be all those approved by the City of Boise and as required by the Architectural Guidelines and as shown in Exhibit 'B' hereto." The applicable City of Boise Ordinance requires a five foot side yard setback, regardless of whether the structure is a one-story or a two-story structure.

The Architectural Guidelines (Guidelines) do not set forth any specific requirements for setbacks, but the Guidelines do incorporate Exhibit B, which establishes the following setback requirements:

5' SETBACK ON BOTH SIDES TYP

0 1ST STORY

10' SETBACK

0 2ND STORY

All parties agree that this provision of the Restrictive Covenants requires a five foot setback from the common property line for one-story structures, and a ten foot setback for two-story structures. Neither the Restrictive Covenants nor the Architecture Guidelines define the term "story."

The Browns purchased their home on lot 27 on or about August 2, 1992. On or about November 15, 1992, Perkins, who is a building contractor, purchased lot 26 in order to build a home for the Artises. Construction began on the Artises' home on lot 26 in December 1992. Perkins obtained building permits from the City of Boise and obtained the Subdivision's Architectural Control Committee's approval of the Artises' construction plans. The designs for the Artises' home were approved by the Subdivision design review committee. The Artises' home on lot 26

was built in accordance with these approved plans.

After the commencement of construction of the Artises' home, the Browns noticed that the Artises' garage appeared too close to the common property line between lots 26 and 27. The Browns met with Don Gile, a member of the Subdivision Architectural Control Committee, to express their concerns that the Artises' garage was too close to the Browns' property line and was possibly in violation of the setback provisions of the Subdivision's Restrictive Covenants. In response to the Browns' concerns, Mr. Gile proposed that the situation could be mitigated through coordinated landscaping between the property lines of the Browns and the Artises. The Browns also gave notice to Perkins that they believed the Artises' garage was too close to the Browns' property line. Upon completion, the Artises' garage had a five foot setback on the west property line.

There is no dispute between the parties that the main portion of the Artises' home is a two-story structure. The present dispute is over whether the garage portion of the Artises' home, located on the west side of the Artises' home, is a one-story or a two-story structure and whether the setback requirements were met or violated. If the garage is determined to consist of a single story, then the garage is in compliance with the Restrictive Covenants. If the garage is determined to have two stories, then the garage violates the requirement under the Restrictive Covenants that two-story structures have a ten foot side yard setback.

The garage portion of the Artises' home consists of a two car garage, over which a "bonus room" was built. The bonus room was "integrated into the truss system [of the roof] and enclosed within the gabled roof over the garage." The bonus room has two dormers, and is connected to the rest of the second story of the house by a hallway. The difference between the elevation of the bonus room and the second story is approximately 4 inches.

## II.

### PROCEDURAL HISTORY

On February 25, 1993, the Browns filed a complaint seeking a temporary restraining order, a preliminary injunction, and damages against Perkins, his wife Carol J. Perkins, and the Artises, (hereafter collectively referred to as Perkins). The Browns claimed that Perkins violated the setback requirements of the Restrictive Covenants and irreparably harmed the Browns. The Browns sought removal of the structure in order to comply with the Restrictive Covenants or alternatively sought compensation for damages in the amount of the diminution in value of their real property.

Both the Browns and Perkins filed motions for summary judgment. During the hearings on the summary judgment motions, the district court, as the trier of fact, concluded that there were no genuine issues of material fact and that the Perkins were entitled to judgment as a matter of law. Judgment was entered on July 15, 1994, granting Perkins' motion for summary judgment. Perkins subsequently sought and were awarded $6,500.00 in attorney fees (an amount less than the $10,149.50 in fees sought by Perkins) and costs. The Browns appealed to this Court.

### III.

### STANDARD OF REVIEW

Where, as in this case, both parties file motions for summary judgment relying on the same facts, issues and theories, the parties essentially stipulate that there is no genuine issue of material fact which would preclude the district court from entering summary judgment. *Morrissey v. Haley*, 124 Idaho 870, 872, 865 P.2d 961, 963 (1993); *Riverside Dev. Co. v. Ritchie*, 103 Idaho 515, 518–19, 650 P.2d 657, 660–61 (1982). As the trier of fact, the district court is free to arrive at the most probable inferences based upon the evidence before it and grant summary judgment, despite the possibility of conflicting inferences. *Loomis v. Hailey*, 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1991); *Riverside*, 103 Idaho at 519, 650 P.2d at 661. As the trier of fact, the district court

is responsible for resolving the possible conflict between inferences. *Riverside,* 103 Idaho at 519, 650 P.2d at 661.

This Court has held that when "construing a restrictive covenant, which is in derogation of the common law right to use land, restrictions are not to be extended by implication to include any restriction not expressed clearly and doubts are to be resolved in favor of the free use of land." *Post v. Murphy,* 125 Idaho 473, 475, 873 P.2d 118, 120 (1994); *Thomas v. Campbell,* 107 Idaho 398, 404, 690 P.2d 333, 339 (1984). In the case at hand, both parties filed motions for summary judgment on substantially the same issues, facts and theories, and the district court was the trier of fact. Therefore, the district court was free to draw the most probable inferences in construing the Restrictive Covenants.

On appeals from the granting of summary judgment, this Court reviews the record that was before the court below, including the pleadings, depositions and admissions, and affidavits, if any, to determine *de novo* whether, after construing the facts in the light most favorable to the nonmoving party, there is a genuine issue as to any material fact and whether ... the moving party, is entitled to judgment as a matter of law.

*Mitchell v. Zilog, Inc.,* 125 Idaho 709, 712, 874 P.2d 520, 523 (1994); *State v. Shama Resources Ltd. Partnership,* 127 Idaho 267, 270, 899 P.2d 977, 980 (1995).

## IV.

## THE GARAGE, AS COMPLETED, IS A TWO–STORY STRUCTURE

The only issue raised by the parties before the trial court, and this Court, is whether or not the garage "structure" is a one- or two-story "structure". Both parties acknowledge that the main house is a two-story structure. We address, therefore, only the issue raised which is that of the garage as a separate "structure".

▮ Restrictive covenants, which restrict the uses to which a party may put his or her property, are valid and enforceable. *Sun Valley Ctr. v. Sun Valley Co.,* 107 Idaho

411, 413, 690 P.2d 346, 348 (1984). Because restrictive covenants are in derogation of the common law right of a person to use land for all lawful purposes, covenants are not to be construed to extend by implication any restriction not clearly expressed in the covenants. *Post,* 125 Idaho at 475, 873 P.2d at 120; *Thomas,* 107 Idaho at 404, 690 P.2d at 339. All doubts and ambiguities are to be resolved in favor of the free use of land. *Post,* 125 Idaho at 475, 873 P.2d at 120; *Thomas,* 107 Idaho at 404, 690 P.2d at 339. Thus, restrictions that are found to be clearly expressed in the Restrictive Covenants are to be applied against the free use of land, while restrictions that are not clearly expressed will be resolved in favor of the free use of land. *Thomas,* 107 Idaho at 404, 690 P.2d at 339.

▮ When a court interprets a restrictive covenant, it is to apply generally the same rules of construction as are applied to any contract or covenant. *Sun Valley Ctr.,* 107 Idaho at 413, 690 P.2d at 348; *Smith v. Shinn,* 82 Idaho 141, 147, 350 P.2d 348, 351 (1960). Where contract terms are clear and unambiguous, the interpretation of the contract's meaning is a question of law. *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 201, 899 P.2d 411, 414 (1995). On the other hand, where the terms of a contract are ambiguous, the interpretation of the contract's meaning is a question of fact. *St. Clair v. Krueger,* 115 Idaho 702, 704, 769 P.2d 579, 581 (1989); *Clark v. St. Paul Property & Liab. Ins. Cos.,* 102 Idaho 756, 757, 639 P.2d 454, 455 (1981). The preliminary question of whether a contract is ambiguous, is a question of law over which this Court exercises free review. *City of Chubbuck,* 127 Idaho at 201, 899 P.2d at 414; *Post,* 125 Idaho at 475, 873 P.2d at 120.

A restrictive covenant is ambiguous when it is capable of more than one reasonable interpretation on a given issue. It is only if an ambiguity is found that any "construction" is necessary. Where there is no ambiguity, there is no room for construction; the plain meaning of the language governs.

*Post,* 125 Idaho at 475, 873 P.2d at 120 (citations omitted); *see Sun Valley Ctr.,* 107 Idaho at 413, 690 P.2d at 348. To determine whether there is an ambiguity in the Restrictive Covenants in the present case, this Court must determine whether the provisions are reasonably susceptible to conflicting interpretations. *City of Chubbuck,* 127 Idaho at 201, 899 P.2d at 414; *City of Boise v. Planet Ins. Co.,* 126 Idaho 51, 55–56, 878 P.2d 750, 754–55 (1994). In interpreting any provisions of a contract or restrictive covenant, the entire agreement must be viewed as a whole. *St. Clair,* 115 Idaho at 705, 769 P.2d at 582.

█ If an ambiguity is found in the restrictive covenant, the Court is to determine the intent of the parties at the time the instrument was drafted. *Thomas,* 107 Idaho at 404, 690 P.2d at 339. The interpretation of the restrictive covenants intended by the drafters can be ascertained from the language of the covenants, the existing circumstances at the time of the formulation of the covenants, and the conduct of the parties. *Id.* Additionally, the mutual interpretation of the restrictive covenants afford cogent evidence of their meaning. *Id.*

The requirements of the Restrictive Covenants at issue are not ambiguous and are not reasonably susceptible to conflicting interpretations. The Restrictive Covenants require that "[t]he setbacks shall be all those approved by the City of Boise and as required by the Architectural Guidelines and as shown in Exhibit 'B' hereto." Article X, § 15(D) of the Restrictive Covenants. The Architectural Guidelines and Exhibit B, which are incorporated by reference into the Restrictive Covenants, require a five foot side yard setback for structures that have a single story and a ten foot setback for structures with two stories. The City of Boise requires a five foot side yard setback regardless of whether the structure consists of one-story or two-stories. Boise City Ordinance § 11–4, Table 2. Thus, the Restrictive Covenants require a greater side yard setback for a two story structure than does the Boise City Ordinance.

█ Perkins argues that applying the dictionary definitions and the common use of

the term "story," the bonus room does not constitute a second story. Perkins' argument is correct to the extent that the law states that a term is not rendered ambiguous where there is a common use or settled legal meaning. *City of Chubbuck,* 127 Idaho at 201, 899 P.2d at 414. However, this rule only applies if the term is not defined in the document where the term is used. *Id.* While the Restrictive Covenants do not define the term "story" in the document itself, the Restrictive Covenants incorporate by reference a definition of the term, which should be applied in this case.

The Restrictive Covenants include setback requirements approved by the City of Boise. Contained in the Boise City Ordinances is the definition of the term "story." Since the drafters of the Restrictive Covenants did not include any definitions to interpret the setback requirements in the Restrictive Covenants, and since the definitions adopted by the City of Boise were in existence at the time the Restrictive Covenants were adopted, the City's definitions used to interpret its setback requirements are incorporated into the Restrictive Covenants. Thus, in determining the plain and ordinary meaning of the term "story," the definitions provided in the Boise City Ordinances should be used.

The City of Boise has defined the term "story" as follows:

[t]hat portion of a building included between the upper surface of any floor and the upper surface of the floor next above, except that the topmost story shall be that portion of a building included between the upper surface of the topmost floor and the ceiling or roof above. If the finished floor level directly above a basement or cellar is more than six feet (6') above grade, such basement or cellar shall be considered a story.

Under this definition, the bonus room falls within the meaning of a story. The bonus room is located above the garage and comprises the area between the upper surface of the floor above the garage and the roof. Additionally, John Perkins testified that, under the Uniform Building Code's definition of the term story, which is virtually identical to

the definition approved by the City of Boise in its Ordinances, the bonus room would constitute a story. Accordingly, the bonus room is part of the second story of the Artises' home and is required to have a ten foot side yard setback. The structure has only a five foot setback, and thus is in violation of the Restrictive Covenants. The futility of this dispute is that the garage may be rendered a "one story structure" by the removal of the floor above the garage.

## V.

## CONCLUSION

The trial court is reversed and the cause remanded for action consistent with this opinion. Costs to appellant. No attorney fees are awarded on appeal.

SILAK and SCHROEDER, JJ., and GUTIERREZ, J. Pro Tem., concur.

SCHILLING, Justice Pro Tem., dissenting.

I disagree with the conclusion reached in section IV of the Court's opinion that "the City's definitions used to interpret its setback requirements are incorporated into the Restrictive Covenants."

The Restrictive Covenants provides:

### ARTICLE X

### PROPERTY USE RESTRICTIONS

D. *Setbacks.* The setbacks shall be all those approved by the City of Boise and as required by the Architectural Guidelines and as shown in Exhibit "B" hereto.

Respondents' setback of five feet would have complied with the requirements of the applicable Boise City Ordinance § 11–4, Table 2.

In my opinion, the above reference does not "incorporate by reference" a definition of the term "story" found in Boise City Ordinance § 11–1—3.1 (1993), upon which the Court bases its decision. Since the Restrictive Covenants did not contain a definition of the term, the District Court was correct in

applying the "plain ordinary meaning of the word story...."

I would affirm the decision of the District Court.