IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 51111

| | |
|---|---|
| JOHN MARQUETTE and JUDY CORNISH, husband and wife, | ) ) ) |
| | Filed: August 16, 2024 |
| Plaintiffs-Counterdefendants-Respondents, | ) ) ) |
| | Melanie Gagnepain, Clerk |
| v. | ) ) ) |
| | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| LEVI FALCK and SARRAH FALCK, husband and wife, | ) ) ) |
| Defendants-Counterclaimants-Appellants. | ) ) ) ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Boundary County. Hon. Lamont C. Berecz, District Judge.

Second amended final judgment, affirmed.

Bistline Law, PLLC; Arthur M. Bistline, Coeur d'Alene, for appellants. Arthur M. Bistline argued.

Sandpoint Law, P.C.; Toby McLaughlin, Sandpoint, for respondents. Toby McLaughlin argued.

_____

HUSKEY, Judge

Levi and Sarrah Falck (the Falcks) appeal from the second amended final judgment granting injunctive relief after the district court found their activities and use of their property violated the covenants, conditions, and restrictions of Meadow Creek Estates. The Falcks argue the district court lacked substantial and competent evidence to find their actions constituted a nuisance; the covenants, conditions, and restrictions (CC&Rs) are too ambiguous to be enforceable; and the district court's order enjoining them from engaging in certain activities on their property is overbroad. The Falcks further argue the award of attorney fees to John Marquette and Judy Cornish (the Marquettes) should be vacated. The Marquettes contend substantial evidence was presented at trial to support the finding of nuisance under the CC&Rs. The

Marquettes argue the CC&Rs are not ambiguous and even if they are, it would not render them unenforceable; the injunction is targeted at the behavior constituting the nuisance and is not overly broad; and the amended attorney fees filing was not untimely because it supplemented a timely memorandum. For the reasons set forth below, we affirm the decision.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Marquettes own Lot 6 of Meadow Creek Estates and the Falcks own Lot 5. Lot 6 sits north of, and adjacent to, Lot 5; and the lots share a common north/south boundary line. Meadow Creek Estates is a residential subdivision governed by CC&Rs which define activities and use of property permitted within the subdivision.

The Falcks used Lot 5 for a variety of activities including the repairing and maintenance of demolition derby cars and storage of inoperable vehicles. From approximately 2020 to 2022, the property was used to store wrecked or inoperable cars, tires, auto body parts, demolition derby cars, boats, construction equipment, trailers, containers with fluid, and piles of trash. Beginning in 2021, noises began emanating from the Falcks' property at all hours of the day, from early morning until late into the night, and included extremely loud revving of engines, idling vehicles, auto body and engine repair, construction work, and loud music. The Marquettes texted, called, and talked to the Falcks regarding the noise. The Meadow Creek Estates Homeowner's Association (HOA) received complaints and sent letters to the Falcks demanding compliance with the CC&Rs and demanding they stop the noises and other behavior that violated the CC&Rs. The Falcks did not respond to the Marquettes' requests or the HOA's demand that they comply with the CC&Rs, and the Falcks continued the activities giving rise to the complaints. The Marquettes filed suit alleging the Falcks' actions and use of their property constituted statutory and common law nuisance and violated the CC&Rs.

A two-day bench trial was held and, following the presentation of evidence, the district court held the Falcks violated several provisions of the CC&Rs. The district court found the CC&Rs were binding on all lot owners and the Falcks failed to comply with Article 5.1 (use of lots), Article 5.4 (commercial use), Article 5.5 (lot maintenance), Article 5.6 (the right of quiet enjoyment and nuisance), Article 5.7(c) (quiet hours), and Article 6.1 (repair and maintenance rights and duties of owners). The district court also held the Falcks' lot constituted a nuisance under Idaho Code § 52-101 and characterized the property as meeting the definition of a junkyard

2

under Boundary County Code § 10.5.1.2. The district court found the Marquettes were entitled to injunctive relief and enjoined the Falcks from certain activities.

On July 14, 2023, the district court entered judgment and awarded costs and attorney fees to the Marquettes. The Marquettes filed a memorandum of costs and fees on July 17, 2023, but did not attach any exhibits. The Marquettes filed an amended memorandum of cost and fees on July 24, 2023, and included the spreadsheet of costs, but did not include a fee ledger of attorney fees. The Falcks objected to the amended memorandum of fees and costs, arguing the Marquettes had not met their burden in proving the reasonableness of attorney fees because the request failed to include an itemization of the time spent on the case. The Marquettes filed a second amended memorandum of costs and fees on July 31, 2023; a ledger of attorney fees was included in the filing. The Falcks objected to the second amended memorandum of fees and costs based on untimely filing. The Marquettes answered, arguing the filing was timely under the Idaho Rules of Civil Procedure 2.2. The Marquettes also asserted that there was no prejudice to the Falcks because the amount of attorney fees was known since the initial memorandum of costs was filed, that memorandum indicated the fee ledger was included but was accidentally omitted, and the inclusion of the attorney fee ledger on the second amended memorandum cured the deficiency. Finally, the Marquettes argued because the inclusion of the fee ledger was a supplement to the original and the amount sought did not change, the original met the obligation of a timely filing and the Falcks had a full and fair opportunity to be heard. The district court held a hearing on the request for attorney fees. The district court concluded that although the filing was untimely by one day, the Falcks had not alleged any prejudice and that accepting the late filing was a discretionary decision for the district court. The district court accepted the filing and to address any potential prejudice, the district court gave the Falcks fourteen days to file any additional objection. The Falcks did not file an objection.

The district court issued an amended final judgment, awarding costs in the amount of $1,582.18 and attorney fees in the amount of $57,901.50 to the Marquettes. In a second amended final judgment, the district court again awarded costs in the amount of $1,582.18 and attorney fees in the amount of $57,901.50. The Falcks appealed.

## II.

## STANDARD OF REVIEW

Where a trial court sits as a finder of fact without a jury, the court is required to enter findings of fact and conclusions of law. I.R.C.P. 52(a); *Estate of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps., Inc.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

This Court freely reviews questions of law and contract interpretation. *Adams v. Kimberley One Townhouse Owner's Ass'n, Inc.*, 158 Idaho 770, 773, 352 P.3d 492, 495 (2015). "The granting or refusal of an injunction is a matter resting largely in the trial court's discretion." *Munden v. Bannock Cnty.*, 169 Idaho 818, 827, 504 P.3d 354, 363 (2022).

The decision to award attorney fees and costs is also reviewed for an abuse of discretion. *Westover v. Idaho Cntys. Risk Mgmt. Program*, 164 Idaho 385, 388, 430 P.3d 1284, 1287 (2018). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

4

ANALYSIS

The Falcks argue the district court erred in finding their activities and use of their property constituted a nuisance, the CC&Rs are ambiguous and unenforceable, the injunctive relief granted is too broad, and the district court erred in accepting the Marquettes' late filed attorney fee ledger in support of their request for attorney fees. The Marquettes argue the district court did not err in any of its findings. Each argument will be addressed below.

**A.     The Falcks' Use of the Property Constituted Nuisance**

The Falcks argue there was insufficient evidence to support the district court's finding that the activities conducted on their property constitute a nuisance because only the Marquettes complained, and they are overly sensitive; the activities were not persistent or unusual activities for North Idaho; and the audio and video recordings played in the court room did not accurately portray noise levels. The Marquettes argue the district court correctly determined the Falcks' use of and activities on the lot violated multiple provisions of the CC&Rs based on substantial evidence presented at trial.

The district court found the Falcks' actions and use of the property violated the nuisance provision of Article 5.6, which reads:

> 5.6 Nuisances. No noxious, illegal, or offensive activities shall be carried on within any Lot; nor shall anything be done thereon which may be or may become an annoyance or a nuisance to or which may in any way interfere with the quiet enjoyment of each of the other Owners of their respective lots (i.e. continually barking dogs).

The district court found the Falcks' use of the property constituted a public nuisance because it is a junkyard pursuant to Boundary County Code §§ 2.31 and 10.5.1.2. The district court also found the Falcks' actions and use of property constituted a private nuisance because they caused "shockingly loud," "obnoxious[,] and pervasive" noises, in violation of the CC&Rs.

**1.     Public nuisance**

Idaho Code § 52-101 defines a nuisance as "[a]nything which is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." "Every nuisance not defined by law as a public nuisance or a moral nuisance, is private." I.C. § 52-107.[1] The district court,

---

[1]     The statute contains exceptions, none of which are relevant here.

after hearing testimony and audio recordings and reviewing photographs and videos,[2] held the Falcks' property constituted a junkyard as defined by Boundary County Code §§ 2.31[3] and 10.5.1.2[4] because of the "various types of broken-down cars, car parts, and piles of junk all over their property." The Falcks do not challenge the district court's finding that their use of the property constituted a public nuisance and, thus, was a nuisance in violation of Article 5.6 of the CC&Rs. "[W]hen a lower court makes a decision on alternative grounds and one or more of those grounds are not challenged on appeal, we will affirm." *Kugler v. Nelson*, 160 Idaho 408, 416, 374 P.3d 571, 579 (2016); *see, e.g.*, *Hilliard v. Murphy Land Co., LLC*, 158 Idaho 737, 741, 351 P.3d 1195, 1199 (2015).

### 2. Private nuisance

The Falcks argue that their actions and use of their property does not constitute a private nuisance because only the Marquettes complained, the Falcks' activities are not unusual or persistent, and the video and audio evidence may not have accurately represented what was actually seen and heard because of the artificial setting of the courtroom.

---

[2] The Falcks requested the standard record on appeal. In a civil case, only the exhibit list, not the exhibits themselves, are included in the record. *See* I.A.R. 28(b)(1). There are no exhibits included in the record for this Court to review. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell v. Sellers*, 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct. App. 1997). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.* Rather, "the missing portions of that record are to be presumed to support the action of the trial court." *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). Because the exhibits were not provided as part of the appellate record on appeal, the exhibits are presumed to support the district court's factual finding that the Falcks' actions and use of their property violated multiple provisions of the CC&Rs. Any exhibits not included in the record, but referenced during oral argument, are not considered by this Court on appeal.

[3] Boundary County Code 2.3.1 defines a junkyard as:
the use of any lot, parcel or tract of land for the outdoor storage or abandonment of refuse; or for the storage, impoundment, dismantling, demolition, salvage or abandonment of more than three (3) derelict automobiles, other vehicles or parts thereof. A derelict vehicle is any vehicle that is clearly inoperable and unable to move under its own power; or which is partially or totally dismantled or damaged so as to render the vehicle unsafe or illegal to operate on public roads or rights of way.

[4] Pursuant to Boundary County Code § 10.5.1.2, "[n]on-commercial junkyards established or maintained contrary to the provisions established herein constitute [sic] are hereby deemed a public nuisance."

The Falcks provide no authority for the proposition that a certain number of people must complain in order to establish a nuisance or that an activity must be unusual to constitute a nuisance. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997).

Next, regarding the Falcks' argument that the activities were not persistent, neither Idaho Code nor the Restatement expressly define a nuisance as being ongoing or continuing. *See* I.C. §§ 52-101, -102, *et seq.* and Restatement (Second) of Torts, § 822. In determining whether an activity constitutes a nuisance, courts have considered whether the activity creates an undue amount of noise, where the activities are conducted, whether the activities are conducted during reasonable hours of the day, and whether the activity affects the rights of the neighbors around them. *See Gabriel v. Cazier*, 130 Idaho 171, 174, 938 P.2d 1209, 1212 (1997).

Further, the Falcks' argument that their activities were not persistent is belied by the record. The exhibits are not in the record and, therefore, are presumed to support the district court's factual findings. Moreover, the Marquettes kept a log to record the date, duration, and types of noises emanating from the Falcks' lot from February 7, 2021, to January 17, 2023. Cornish testified that the log was not a complete record because the log did not include dates when the Marquettes were out of town or list occurrences that she did not record because she could not leave her work to make a record entry. Of the days Cornish recorded an entry, she recorded noise concerns on at least 140 days which included 49 quiet hour violations. On this, and on all issues, the district court found the Marquettes' testimony to be highly credible. Therefore, there is substantial and competent evidence that the noises emanating from Falcks' lot were both persistent and pervasive.

Finally, the Falcks' argument that the audio and video evidence may not have accurately depicted the noise and view of the property is not reviewable by this Court. Because the Falcks failed to include the exhibits in the appellate record, they are presumed to support the district court's findings. Even when reviewing the merits, the district court's finding that the noises emanating from the Falcks' property constituted a nuisance pursuant to Article 5.6 of the CC&Rs is supported by substantial and competent evidence. Despite the Falcks' assertion on appeal that "no evidence was introduced" to establish a nuisance, the record belies this contention. The district court found the Marquettes' testimony alone was substantial evidence. In addition to the Marquettes' testimony and the audio and video recordings, the evidence included: testimony that the Meadow Creek Estates HOA sent letters to the Falcks demanding the activities that violated

7

the CC&Rs cease; photographs; and testimony from other neighbors that referenced "a loud roar, lacking a muffler" that was audible outside despite the neighbor's lot being a fair distance from the Falcks, loud revving occurred roughly once a week in the summer months, music with a loud bass was audible during quiet hours sometimes needing intervention from law enforcement to be turned off, and requests to keep the noise down from vehicle repairs were met with outright refusal.

The district court found the sound emanating from the property constituted a nuisance holding:

> It is difficult on the written page to describe how shockingly loud the noises were from [the Falcks'] unmuffled demolition derby vehicles. Ms. Cornish testified to the injurious effect it has had on her health, her nerves, and her ability to enjoy her home. Having heard the testimony and listened to the exhibits, the Court has no doubt Ms. Cornish was telling the truth.

The district court went on:

> The Court agrees with [the Falcks] that Ms. Cornish is more sensitive than many people. Even so, the noises from the Falcks (or friends) are so obnoxious and pervasive that the Court cannot fathom anybody, North Idahoan or not, outside of a deaf person, being unbothered by living next to the Falcks' property. And that is just addressing the noise.

The district court, acting as the factfinder, had substantial evidence to determine the noise was a nuisance, occurred outside of reasonable hours, affected the Marquettes, and thus, violated Article 5.6 of the CC&Rs.

## B. The CC&Rs Are Not Ambiguous

The Falcks contend the language used in the CC&Rs is too ambiguous to be enforceable, and as a result, their activities or use of their property was not prohibited conduct. Specifically, the Falcks argue because the terms nuisance, annoying, noxious, offensive, bothersome, or loud are not defined, their activities must be interpreted as permitted activities. The Falcks further rely on the testimony of Nelson Mast, the Meadow Creek Estates developer, who had the capacity and authority to modify the CC&Rs in response to complaints about the Falcks but did not, as evidence there was no intent to prohibit the activities in question. The Marquettes argue the CC&Rs are not ambiguous, and noises are precisely the type of annoyances or nuisances that can interfere with quiet enjoyment. The Marquettes further argue that even if some terms are ambiguous, it does not render the CC&Rs unenforceable but would allow the court to determine the drafters' intent based upon the evidence and circumstances. The Marquettes argue the developer's testimony merely

8

demonstrated that he felt the CC&Rs were already adequately drafted to address the nuisance concerns.

The district court found the Falks violated Article 5.1 (use of lots); Article 5.4 (commercial use); Article 5.5 (lot maintenance); Article 5.6 (the right of quiet enjoyment and nuisance); Article 5.7(c) (quiet hours); and Article 6.1 (repair and maintenance rights and duties of owners). "Restrictive covenants, which restrict the uses to which a party may put his or her property, are valid and enforceable." *Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 868, 454 P.3d 504, 510 (2019) (quoting *Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996)). "[C]ovenants are in derogation of the common law right of a person to use land for all lawful purposes," so this Court will not construe them "to extend by implication any restriction not clearly expressed in the covenants." *Id.* "All doubts and ambiguities are to be resolved in favor of the free use of land." *Id.* In other words, "restrictions that are found to be clearly expressed in the Restrictive Covenants are to be applied against the free use of land, while restrictions that are not clearly expressed will be resolved in favor of the free use of land." *Id.*

In interpreting restrictive covenants, the Court generally applies the rules of contract construction. *Pinehaven Plan. Bd. v. Brooks*, 138 Idaho 826, 829, 70 P.3d 664, 667 (2003). In applying the rules of contract construction, the court analyzes the document in two steps. "Beginning with the plain language of the covenant, the first step is to determine whether or not there is an ambiguity." *Id*. "Words or phrases that have established definitions in common use or settled legal meanings are not rendered ambiguous merely because they are not defined in the document where they are used." *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 201, 899 P.2d 411, 414 (1995). "Rather, a covenant is ambiguous when it is capable of more than one reasonable interpretation on a given issue." *Pinehaven Plan. Bd.*, 138 Idaho at 829, 70 P.3d at 667. "To determine whether or not a covenant is ambiguous, the court must view the agreement as a whole." *Id.*

The second step in contract or covenant construction depends on whether or not an ambiguity has been found. If the covenants are unambiguous, then the court must apply them as a matter of law. *City of Chubbuck*, 127 Idaho at 201, 899 P.2d at 414. "Where there is no ambiguity, there is no room for construction; the plain meaning governs." *D & M Country Ests. Homeowners Ass'n v. Romriell*, 138 Idaho 160, 164-65, 59 P.3d 965, 969-70 (2002) (quoting *Post v. Murphy*, 125 Idaho 473, 475, 873 P.2d 118, 120 (1994)). If there is an ambiguity in

9

the covenants, then interpretation is a question of fact, and the court must determine the intent of the parties at the time the instrument was drafted. *Brown*, 129 Idaho at 193, 923 P.2d at 438. To determine the drafters' intent, the court looks to "the language of the covenants, the existing circumstances at the time of the formulation of the covenants, and the conduct of the parties." *Id.*

Preliminarily, it appears that any argument that the terms of the CC&Rs are ambiguous is being raised for the first time on appeal because the record does not demonstrate that such an argument was made in the district court. Instead, the only reference to a similar concept is in the Falcks' answer to Marquettes' initial petition wherein they raise an affirmative defense that "the provisions in the CC&Rs relating to 'quiet hours' are unenforceable based on the lack of any objective standard to evaluate if that provision is breached." No other terms or provisions of the CC&Rs are alleged to be ambiguous or subjective. Without any evidence that a challenge to the ambiguity of the other provisions was raised in the district court, we decline to address it, as generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). But even if addressed on the merits, the Falcks' arguments fail.

**1.      Article 5.6 (Nuisance) and Article 5.7 (Quiet Hours)**

The Falcks argue the use of words such as loud, bothersome, annoying, and noxious are not defined in the CC&Rs and thus, are ambiguous. However, as noted above, the lack of a definition does not render a term ambiguous. The Falcks provide no additional argument regarding the ambiguity of the listed terms.

Next, the Falcks argue the developer, Mast, could have amended the CC&Rs if he thought the Falcks' activities needed to be addressed. This argument is irrelevant to first determine whether a term is ambiguous. Moreover, Mast added Article 5.7(c) establishing quiet hours in the 2020 revision to the CC&Rs to specifically address the noise complaints about the Falcks. That provision provides in relevant part:

> Additional Rights of Quiet Enjoyment. In addition to other requirements both listed within this Declaration or otherwise incorporated, Owners shall expect certain rights to quiet Enjoyment:
> . . . .
> c. Quiet Hours. No persons shall create, be involved in, or otherwise produce bothersome or loud noises between the times of 9:00 PM and 8:00 AM.

Finally, the Falcks argue they did not violate the quiet enjoyment provision because only the Marquettes complained. However, the Falcks provide no argument or authority explaining how the number of complainants relates to a finding that a restrictive land covenant is ambiguous. They similarly provide no argument or authority that a certain number of people must be disturbed before a court can find the quiet enjoyment provision of the CC&Rs is violated. The Falcks' arguments are a series of conclusory statements, some of which have no relevance to the analysis. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440.

As set forth above, Article 5.6 prohibits activities "which may be or may become an annoyance or a nuisance to or which may in any way interfere with the quiet enjoyment of each of the other Owners of their respective lots (i.e. continually barking dogs)." The parenthetical inclusion of an example within the CC&R language indicates the phrase "quiet enjoyment" is to be interpreted in the plain and common meaning of quiet. This interpretation is supported by subsequent provisions within the CC&Rs, such as Article 5.7 (a) and (b) which prohibits hunting and the discharge of firearms on the lots, respectively.

The plain language of the CC&Rs regarding loud, bothersome, annoying, noxious, and quiet enjoyment, when read as a whole, is not ambiguous, and there is nothing unclear about the terms. Moreover, by his own testimony, Levi Falck testified that he understood what the terms meant and that his activities and use of property violated the CC&Rs. Levi Falck testified that the noise coming from his property could be characterized as "very loud" and "quite loud," that the noise was loud enough that it could be offensive to a neighbor; that the extremely loud revving noises might impact someone's quiet enjoyment; and that the loud revving, when it was occurring, violated "some kind of noise or something they feel is there," referencing a violation of the CC&Rs. Thus, by his own testimony, Levi Falck clearly understood how loud the noise emanating from his property was and that it was violating the CC&Rs.

The district court also heard the testimony of the Marquettes describing how loud, bothersome, annoying, and noxious the noises were. The district court heard and saw the video, audio, and photographic evidence. Additionally, various letters from either the HOA or Mast informed the Falcks that the activities were creating too much noise, needed to be conducted inside the shop, and/or needed to cease. This is not a close case regarding the level and frequency of noise emanating from the Falcks' property. The district court found that the noises emanating from

11

the Falcks' property violated Article 5.6 (nuisance) and Article 5.7.c (quiet hours) because of the "shockingly loud," "obnoxious[,] and pervasive" noises that occurred all hours of the day and late into the evening.

The evidence in this case indicated that all the parties understood the plain meaning of the terms loud, bothersome, annoyance, and noxious, and thus, the terms are not ambiguous. The district court did not err in finding the above provisions of the CC&Rs were not ambiguous, were enforceable, and were violated.

### 2. Article 5.5 (Neat and Orderly Condition); Article 6.1 (Maintain Lot)

The Falcks also allege the district court erred because it found the Falcks' lot was not in a "neat and tidy condition" and that the phrase is ambiguous and has no clear meaning. As with the above argument, this argument is waived on appeal. *Powell*, 130 Idaho at 128, 937 P.2d at 440 (party waives issue on appeal if either argument or authority is lacking). Nonetheless, even if properly before this Court, the district court made no such finding. Instead, the district court found the Falcks "failed to keep their property 'in a clean, neat, and orderly condition and in good repair at all times, including weed control' as required by Article 5.5 of the CC&R's." The district court also found the Falcks failed to "maintain and repair his or her Lot and all improvements thereon, in good, clean, neat, and orderly condition and in good repair" as required by Article 6.1. The phrase "neat and tidy" does not appear in the CC&Rs nor does it appear in the district court's findings. Absent challenges to the actual findings made by the district court, the Falcks have waived the issue on appeal. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440.

Even if addressed on the merits, the argument fails. Article 5.5 states, "Each Lot and the exterior appearance of improvements thereon shall be maintained in a clean, neat, and orderly condition and in good repair at all times, including weed control." When the sentence is viewed as a whole, "clean" and "neat" are listed with "orderly" and "in good repair." The sentence includes an example of weed control to describe what should be done to keep the property in compliance with the CC&Rs.

In relevant part, Article 6.1 reads:

> Repair and Maintenance Rights and Duties of Owners. Each Lot Owner shall, at his or her sole cost and expense, maintain and repair his or her Lot and all improvements thereon, in good, clean, neat, and orderly condition and in good

12

repair, so as to be consistent with the balance of the Project, in the judgment of the Management Body.

A plain, reasonable reading of the articles does not lead to ambiguity, and the plain meaning would govern. While the Falcks argue that "Cornish cannot even see Falcks' lot unless they are trying to," we are unclear what relevance this has to an argument that a term is ambiguous.

As with the argument related to the noise issue, this is not a close call. The district court found Meadow Creek Estates to be a "high-end subdivision." The district court further noted, "It cannot be overstated how lovely and upscale the remaining homes in the neighborhood appear to be, as represented in the exhibits presented at trial. The Falcks' eyesore of a property stands in stark contrast to the rest of the development and in defiance of the CC&Rs." The district court found the Falcks' property contained overgrown weeds, piles of trash, inoperable vehicles in various stages of dismantlement and disrepair, trailers, and storage barrels. The district court also found the property meets the definition of a junkyard. There is no legitimate argument that Articles 5.5 and 6.1 are ambiguous or that Falck was unclear about the meaning of the terms.

Thus, as to the terms and articles of the CC&Rs that are challenged, the terms are not ambiguous, and the district court did not err in finding that the terms were not ambiguous, were enforceable, and were violated. The Falcks provide no additional argument regarding the district court's finding that the Falcks' activities on and use of their property violated Article 5.1 (the use of lots provision) or Article 5.4 (the commercial use provision).

## C. The District Court Did Not Err in Granting Injunctive Relief

The Falcks argue the district court's injunction is overly broad and vague and imposed greater restrictions on the Falcks' use of the property than the CC&Rs or the law would permit, rendering accessibility and usability of the property impossible without violating the order. The Marquettes argue the injunctive relief issued by the district court is appropriate and targeted at preventing specific behaviors identified in the complaint and during the proceedings. The Marquettes further argue hypothetical future violations are not properly before the court. The district court enjoined the Falcks from:

    a. Performing any vehicle repairs, modifications or upgrades or similar activities at the Falck Property except within an enclosed building and in such a manner that such cannot be heard from the [Marquettes'] property;
    b. Using [Falcks'] lot commercially in violation of Article 5.4 of the CC&Rs;
    c. Playing music at a level so as to be heard from [Marquettes'] home in violation of Articles 5.6 and/or 5.7 of the CC&Rs;
    d. Storing any refuse outdoors;

13

e. Burning any refuse in open pits on the [Falcks'] property;
f. Emitting vehicle exhaust or chemical fumes in a manner that such exhaust/fumes enter the [Marquettes'] property;
g. Storing any vehicles or vehicle parts on the [Falcks'] property except in enclosed buildings and/or containers;
h. Threatening to injure the [Marquettes];
i. Performing any construction which violates the construction schedules or noise restrictions of the CC&Rs;
j. Leasing or renting any part of the [Falcks'] property in violation of Article 5.9 of the CC&Rs;
k. Utilizing the second floor of the [Falcks'] shop as an accessory dwelling unit or living quarters; and
l. Failing to keep the [Falcks'] Property in a clean, neat and orderly condition including wee[d] control, pursuant to Articles 5.5 and 6.1 of the CC&Rs.

First, the order granting injunctive relief listed twelve prohibited activities but the Falcks only challenge items c, d, e, f, g, and l. Thus, as to restrictions a, b, h, i, j, and k, the district court did not err in enjoining those activities. As to the specific restrictions cited by the Falcks, although the Falcks provide conclusory statements and hypothetical situations that could lead to violating the restrictions, they do not cite a standard of review or legal standard by which to evaluate how and in what way the order is overly restrictive or how the district court erred. During oral arguments, the Falcks argued that in light of *Snap! Mobile, Inc. v. Vertical Raise, LLC*, ___ Idaho ___, 544 P.3d 714 (2023), which addressed specificity requirements for an injunction to be effective, the injunction should be found to be unenforceable. *Snap! Mobile* is inapposite in this case because the district court specifically limited the scope of the injunction to the provisions of the CC&Rs. For example, subsection 3 of the injunction prohibits playing music at a level so as to be heard from the Marquette's home *in violation of Articles 5.6 and/or 5.7 of the CC&Rs.* By its very language, the provisions of the injunction are limited by the CC&Rs and, thus, do not limit activity otherwise protected by the CC&Rs. Moreover, a party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440. Because the Falcks either do not challenge certain restrictions or failed to adequately support their argument that the court erred in issuing the injunction, we decline to address the argument.

## D. The Falcks Fail to Establish Any Prejudice Regarding the Memorandum of Attorney Fees and Costs

The Falcks argue the district court erred in permitting the late filed attorney fee ledger as part of the memorandum of fees and costs without a request for an extension or a finding of excusable neglect and therefore the award of attorney fees was improper. The Marquettes argue

14

the award of attorney fees was appropriate because it was only a clerical mistake that caused the attorney fees ledger not to be attached to the initial or first amended request for attorney fees; the inclusion of the attorney fee ledger in the second amended request was a supplement to the earlier filing; and neither in the trial court nor on appeal did the Falcks argue they suffered any prejudice as a result of the late filing.[5] The Marquettes rely on *In re SRBA*, 149 Idaho 532, 544, 237 P.3d 1, 13 (2010), to support their position that the third amended memorandum, which included the appropriate fee ledger, was a supplement to the original memorandum of fees and costs, and thus, was not untimely.

Provision 11.1 of the CC&Rs permits the recovery of reasonable attorney fees as ordered by the Court:

> 11.1 <u>Enforcement.</u> The Management Body, and any Owner, shall have the right to enforce, by any proceedings at law or in equity, all restrictions, conditions, covenants, reservations, liens, and charges now or hereafter imposed by this Declaration, and in such action shall be entitled to recover costs and reasonable attorneys' fees as are ordered by the Court.

Idaho Code § 12-120(3) allows a prevailing party to recover attorney fees pursuant to a contract. CC&Rs are a valid, enforceable contract. *Eagle Springs*, 165 Idaho at 868, 454 P.3d at 510. As the prevailing party, pursuant to the CC&Rs, the Marquettes were entitled to recover their attorney fees. The district court awarded attorney fees on that basis and pursuant to Idaho Rule of Civil Procedure 54. Rule 54 requires that a party must serve an itemization of fees within fourteen days of entry of judgment. Failure to timely file a memorandum of fees is a waiver of right to fees. I.R.C.P. 54 (d)(4).

The district court noted the Marquettes' filing was not a supplement but was not precisely a new request because the amount requested had been listed in all the memorandum of costs. The district court further concluded it had discretion to allow the late filed amendment to the request and motion seeking costs. The district court acknowledged the third amended memorandum of costs and fees was filed a day late, but the Falcks had not identified any prejudice suffered as a result of the late filing. The district court exercised its discretion and allowed the late filing. To ensure the Falcks had a fair opportunity to object, the district court provided the Falcks fourteen days from the hearing to file an objection, but no further objection was filed.

---

[5] On appeal, the Marquettes do not challenge the district court's finding that the second amended request for attorney fees was filed one day late pursuant to I.R.C.P. 2.2.

15

"At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." I.R.C.P. 61; *Houston v. Whittier*, 147 Idaho 900, 904, 216 P.3d 1272, 1276 (2009). "[B]ecause an appellant can only prevail if the claimed error affected a substantial right, the appellant must present some argument that a substantial right was implicated." *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012). Here, the district court granted the Falcks an additional fourteen days to file any further objection, but no objection was filed. The Falcks have failed to establish any prejudice or any error affecting a substantial right. As a result, the district court did not err in awarding attorney fees.

**E.     Attorney Fees on Appeal**

Each party seeks the award of attorney fees. As discussed above, the Marquettes are the prevailing party and are entitled to attorney fees pursuant to Provision 11.1 of the CC&Rs and I.C. § 12-120(3).

Additionally, Idaho Code § 12-121 permits the award of reasonable attorney fees to the prevailing party or parties when the case brought is pursued or defended frivolously, unreasonably, or without foundation. On appeal, the Falcks are not the prevailing party on any claim and, thus, are not eligible for an award of attorney fees. Pursuant to I.C. § 12-121, the Falcks' appeal was pursued frivolously and unreasonably. The Falcks fail to provide authority for several of their arguments, including their argument that a certain number of people must complain in order to establish a nuisance or that an activity must be unusual to constitute a nuisance. The Falcks similarly fail to provide adequate argument and authority that the terms of the CC&Rs are ambiguous or that the district court erred in ordering injunctive relief. Even if the merits of the claims are reviewed, this Court concludes the appeal was pursued frivolously and unreasonably. The Marquettes are the prevailing party and entitled to reasonable attorney fees pursuant to I.C. § 12-121.

**IV.**

**CONCLUSION**

Substantial and competent evidence supports the conclusion of the district court that the Falcks' actions constituted a nuisance under the Meadow Creek Estates CC&Rs as well as Boundary County Code. The terms of the CC&Rs are not ambiguous. In the absence of adequate argument and support, the Falcks' arguments regarding the injunction and the attorney fees

16

necessarily fail.  Therefore, we affirm the second amended final judgment.  Attorney fees and costs to the Marquettes.

Chief Judge GRATTON and Judge TRIBE **CONCUR**.